978 So.2d 1008 (2008)
Irving ROTH and Mrs. Gertrude Roth
v.
NEW HOTEL MONTELEONE, L.L.C.
No. 2007-CA-0549.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 2008.
Robert J. Caluda, The Caluda & Rebennack Law Firm, Metairie, LA, for Plaintiff/Appellant.
John W. Waters, Jr., Kristina L. Junot, David E. Walle, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge EDWIN A. LOMBARD, and Judge LEON A. CANNIZZARO, JR.).
CHARLES R. JONES, Judge.
The Appellants, Gertrude Roth, wife of/and Irving Roth (hereinafter collectively referred to as "the Roths"), appeal the judgment of dismissal of their personal injury suit. We affirm.
The Roths checked into a hotel owned by the New Hotel Monteleone (hereinafter referred to as "the Monteleone") on September *1010 11, 2003, to attend a reunion for World War II veterans, which was being held in the hotel. Mr. Roth, who was seventy-five (75) years-old at the time of his stay, suffers from ambulatory problems and walks with the assistance of a walker.
Upon arriving at the Monteleone, the Roths entered the hotel via its Royal Street entrance, which requires ascending steps in the foyer to enter the hotel lobby. Mr. Roth received assistance from the bellman to climb the steps upon his initial entrance. During the Roths four (4) day stay, they exited and entered the hotel through the Royal Street entrance. Mr. Roth testified that after checking into the Monteleone, he exited and entered the hotel approximately twice a day through the Royal Street entrance with the assistance of hotel personnel. The hotel, however, did have a handicap entrance on Bienville Street.
Nevertheless, on the third day of their stay, Mr. Roth fell while attempting to descend the lobby steps with his walker. He was not being assisted by anyone, including Monteleone staff at the time of his fall. Mrs. Roth had already descended the foyer steps and was waiting outside of the hotel for her husband.
The Roths filed suit against the Monteleone in Civil District Court on May 17, 2004, alleging that the Monteleone was liable for the damages the Roths sustained as a result of Mr. Roth's fall. The Roths did not allege that the steps in question were defective. Rather, at a bench trial held on September 12, 2006, Mr. Roth testified that the Monteleone staff did not advise him that there was a handicap entrance. The Roths further averred that there were no warning signs at the main entrance on Royal St. to indicate that a handicap entrance existed. Mr. Roth testified that he decided to descend the lobby steps alone because the hotel staff was busy assisting other guests.
The Monteleone does not contest that a sign was not posted at its main entrance. However, Ms. Sandra Erneker  the manager on duty at the time of Mr. Roth's fall  testified that the hotel staff assigned to the Royal Street entrance are trained to inform handicapped patrons of the ramp at the Bienville Street entrance and to assist handicapped guests who choose to use the Royal Street entrance.
Ms. Erneker further testified that Mrs. Roth admitted to her that the couple knew about the Bienville Street entrance, but they opted not to use it because they did not want to walk through the hotel's garage. Another Monteleone employee, Mr. Richard Condon  the executive in charge of loss prevention  testified that the hotel staff assigned to the main entrance are trained to tell visibly impaired patrons about the ramp at the Bienville Street entrance.
The district court rendered judgment in favor of the Monteleone, finding no liability on its part and dismissing the Roths' case with prejudice. It is from this judgment that the Roths have filed the instant appeal.
The Roths raise two (2) assignments of error on appeal. First, they allege that the district court committed legal error in finding that the Monteleone was not liable when the Roths proved by undisputed evidence that there were no directional signs on the handicap inaccessible main entrance of the hotel and where the breach of that duty caused the plaintiffs' damages. In their second assignment of error, the Roths assert that the district court committed legal error by failing to invoke an adverse presumption against the Monteleone because it did not call its employees as witnesses at trial.
*1011 Legal errors are subject to a de novo standard of review. Overton v. Shell Oil Co., 05-1001, p. 8 (La.App. 4 Cir. 7/19/06), 937 So.2d 404, 410. Additionally, where there are conflicts in testimony then reasonable evaluations of credibility and reasonable factual findings should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
With regard to the Roths' first assignment of error, they contend that the lack of a handicap sign at the front door is a violation of the Americans with Disabilities Act and LSA-R.S. 40:1731-1735. The Monteleone does not contest that it did not have a sign posted at its Royal Street entrance to direct handicapped persons to its ramp at the Bienville Street entrance. Instead, the hotel contends that its policy was for hotel personnel  especially those stationed at the front door  to inform handicapped persons of the Bienville Street entrance and to assist those handicapped persons who chose to use the Royal Street entrance in spite of being advised of the Bienville Street entrance.
The Roths assert that the Monteleone's failure to post a sign notifying handicapped patrons that there is a handicap entrance makes them liable for Mr. Roth's injuries. Their contention is that had Mr. Roth known of the handicap ramp, he would have used it. Nevertheless, the district court found that the Roths did know of the entrance. We agree.
Both parties testified regarding whether the Roths in fact knew that the hotel had a handicap entrance. Though the Roths testified that they were not informed that there was a handicap entrance, the Monteleone presented testimony from Ms. Erneker and Mr. Condon that it was the hotel's policy to verbally advise impaired patrons of the hotel's handicap entrance and provide assistance for those patrons who nevertheless decided to utilize the Royal Street entrance.
In fact, the Roths testimony that Mr. Roth was assisted by hotel staff every time he used the Royal Street entrance corroborates the testimony of the Monteleone's staff that it was their policy to assist handicapped patrons with the lobby steps.
According to the testimony provided by the Monteleone staff, there are two (2) categories of handicapped guests: those who use the Bienville Street ramp, and those who use the Royal Street entrance with the assistance of the Monteleone's staff. Mr. Roth belonged to the latter category of persons. Mr. Roth was dependent upon hotel staff to assist him in exiting and entering the hotel. Indeed, he was assisted by them each time he entered and exited the hotel, except for the date of the accident. Yet, on the date in question, he decided not to wait for assistance because the staff at the front entrance was busy.
In other words, Mr. Roth became inpatient and decided he was no longer going to wait. When asked how long he waited for someone to help him, Mr. Roth testified "I didn't wait long at all. I waited a few minutes, there was nobody there, and I started down."
We do not find that the district court erred in finding that the Monteleone was not accountable for the Roths' damages where Mr. Roth: knew about an alternate handicap-accessible means of exiting the hotel; purposefully chose not to use said exit, and subsequently, injured himself after attempting to use the main entrance unassisted by anyone. It was Mr. Roth's impatience, not a lack of signage, that caused him to fall. The Bienville Street entrance and a lack of signage is not what *1012 caused Mr. Roth's fall. We find that this assignment of error lacks merit.
The second assignment of error that the Roths raise is that the district court committed legal error in failing to invoke an adverse presumption against the Monteleone for its failure to call employees who allegedly told the Roths that there was a handicap entrance. The Roths argue that an adverse presumption should have been applied against the Monteleone pursuant to the "uncalled witness rule."
In Taylor v. Entergy Corp., 01-805 (La. App. 4 Cir. 4/17/02), 816 So.2d 933, this Court explained the uncalled witness rule as follows:
The "uncalled witness" rule has been defined as an adverse presumption that arises when "a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence" and fails to call such witnesses. 19 Frank L. Maraist, Louisiana Civil Law Treatise: Evidence and Proof, § 4.3 (1999). A party's failure to call such witnesses gives rise to the presumption that "the witnesses' testimony would be unfavorable to him." Id. Although the advent of modern, liberal discovery rules has been recognized to limit this rule, it "remains viable." Id. Indeed, this court has recognized this rule applies when, as in this case, witnesses with peculiar knowledge of material facts pertinent to the case are not called. Stewart v. Great Atlantic and Pacific Tea Co., 657 So.2d 1327, 1330 (La.App. 4 Cir.1995); Gurley v. Schwegmann Supermarkets, Inc., 617 So.2d 41, 44 (La.App. 4 Cir.1993). We have also noted that "[t]he court may consider this presumption as it would any other relevant evidence in the case." Id.

Id., pp. 14-15, 816 So.2d at 941.
We noted that the purpose of the adverse presumption is that "a court may consider the fact that a party did not call a witness, available only to that party, with knowledge of facts not testified to by any other witness, which are pertinent to the case. Once a party makes a showing of this, and the other party does not produce a reasonable explanation for its failure to call that witness, the court may presume that the witness' testimony would have been unfavorable." Gurley v. Schwegmann Supermarkets, 617 So.2d 41, 44 (La.App. 4 Cir.1993).
Upon reviewing the "uncalled witness," we find that the application of an adverse presumption against the party who does not produce a witness is discretionary on the part of the district court. It was well within the discretion of the district court to decide not to apply an adverse presumption.
Furthermore, considering the evidence in the record indicates that there were witnesses who were no longer in the Monteleone's employ and were dispersed by Hurricane Katrina, the uncalled witness rule is not applicable. The rule is intended to punish parties who are withholding witness testimony, not to penalize parties who do not have the power to produce witnesses to testify. Taylor, 01-0805, p. 14, 816 So.2d at 941. Therefore, we find this assignment of error to be without merit.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.