TERRI F. LOVE, Judge.
b This appeal arises from the interdiction proceedings of Thomas Milton Benson, Jr. During an eight-day bench trial, the trial court was presented with voluminous amounts of conflicting lay and medical witness testimony. The trial court found that Mr. Benson should not be interdicted, but denied his request for a new trial to award attorneys’ fees. For the following reasons, we find that the trial court did not err by ruling that Mr. Benson had a right not to testify. The trial court also did not err by admitting out-of-court statements of Mr. Benson and excluding the transcript of his medical examination. We find that the trial court applied the correct legal standard for interdiction. Lastly, the trial court did not abuse its discretion by refusing to award attorneys’ fees. Accordingly, we affirm.

*953
FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 22, 2015, Renee Benson,[1] Rita LeBlanc, and Ryan LeBlanc[2] (collectively “Petitioners”) filed a verified petition for interdiction, seeking a full interdiction of Thomas Milton Benson, Jr. In lieu of a full interdiction, Petitioners sought a partial interdiction as to Mr. Benson’s property. As the trial court stated, Petitioners alleged Mr. Benson “sustained an infirmity that renders him unable to consistently make reasoned decisions regarding the care of his person and his | ^property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.”
The following is a synopsis of events leading to Petitioners filing for interdiction taken from the trial court’s reasons for judgment:[3]
Petitioners alleged that Tom Benson, who is currently eighty-seven years old, experienced a decline in his health over the last two years, particularly in 2014. Starting in May 2014, Tom Benson had several surgical procedures to repair a torn meniscus in his left knee. The last one was performed on November 21, 2014. Tom Benson was not his usual self after these procedures. The procedure in September 2014 was particularly debilitating, rendering him immobile, relegating him to a wheelchair, and requiring twenty-four hour nursing assistance for his care. Additionally, he was prescribed a number of medications for his various maladies, including narcotic pain medication,
Besides his health issues, there were ever changing [sic] dynamics in his familial relationships. The decisions he undertook between December 2, 2014 and January 7, 2015, coupled with his health issues, precipitated the filing of this petition and the allegations made that defendant had evidently lost his •ability to make reasoned decisions and was subjected to undue influence by his current spouse, Gayle Benson.
- Mr. Benson filed a motion to exclude his own. testimony, while Petitioners filed a motion to compel his testimony. The trial court held that Mr. Benson possessed the right not to testify. Mr. Benson was examined by three psychiatric professionals, who then submitted their findings to the trial court. After conducting an eight-day bench trial, the trial court adjudged in favor of Mr. Benson, and denied Petitioners’ request for an interdiction.
Petitioners filed a motion for appeal contending that the trial court erred by not compelling Mr. Benson to testify, by admitting out-of-court statements of Mr. IsBenson, and by applying the incorrect legal standard for interdiction. Mr. Benson subsequently filed a Motion for New Trial regarding attorneys’ fees. The present appeal became timely once the trial court denied Mr. Benson’s Motion for New Trial. See La. C.C.P. art. 2123(C).

TESTIMONY

The trial court appointed three physicians to examine Mr. Benson following the procedures Contained in Louisiana Medical Malpractice statutes. Dr. Ted Bloch III, was chosen by Petitioners as their expert *954 in geriatric psychiatry. Dr. John Thompson, Jr. was selected by Mr. Benson as an expert in general and forensic psychiatry. As instructed by the trial court, Drs. Bloch and Thompson chose Dr. Kenneth Sa-kauye, an expert in geriatric psychiatry, to be the third physician appointed by the court. All three experts examined Mr. Benson in furtherance of preparing expert medical reports for trial.
Dr. Bloch testified that Mr. Benson is “unable to consistently make reasoned decisions about his person and his property,” and believed that Mr. Benson should be fully interdicted. Conversely, Drs. Thompson and Sakauye testified that while Mr. Benson sustained mild cognitive impairment impacting his short-term memory, he should not be interdicted.
The trial court permitted each party to testify, as well as three collateral witnesses per side. Petitioners all testified, as well as Tom Roddy, Takiyah Daniels, and Teresa Trent. Dennis Lauseha, Gayle Benson, and Paul Cordes testified on behalf of Mr. Benson.
In addition, the trial court conducted a “Watermeier hearing” with Mr. Benson, wherein the trial court judge questioned Mr. Benson in the presence of counsel. Other than participation in this hearing, Mr. Benson did not testify.

\ ¿STANDARD OF REVIEW

Appellate courts review findings of fact utilizing the manifest error or clearly wrong standard of review. Hall v. Folger Coffee Co., 03-1734, p. 9 (La.4/14/04), 874 So.2d 90, 98. “Thus, a reviewing court may not merely decide if it would have found the facts of the case differently.” Id. “The reviewing court should affirm the district court where the district court judgment is not clearly wrong or manifestly erroneous.” Id.
To reverse a trial court’s findings, the reviewing court ‘must find from the record that a reasonable factual basis does not exist for the finding of the trial court’ and “ ‘must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).”’ Stobart v. State through Dep’t of Tramp. & Dev., 617 So.2d 880, 882 (La.1993), quoting Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). “[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one.” Stobart, 617 So.2d at 882. “Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Id.
“Moreover, when findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings.” Duhon v. Briley, 12-1137, p. 3 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 257. “Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Id.
However, “if the decision of the trial court, is based upon an erroneous | supplication of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court.” Id. “A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial.” Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735. “Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.” Id. “When such a prejudicial er *955 ror of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.”[4] Id.

INTERDICTION

“The determination of whether to order interdiction is a factual finding, which cannot be set aside in the absence of manifest error or a clearly wrong determination.” In re Interdiction of DeMarco, 09-1791, p. 11 (La.App. 1 Cir. 4/7/10), 38 So.3d 417, 426.
“It is well established that interdiction is a harsh remedy and should be pronounced only where there is clear and convincing proof.” In re Salzer, 482 So.2d 166, 167 (La.App. 4th Cir.1986). La. C.C. art. 389 provides that:
[a] court may order the full interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity, is unable consistently to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.
The person seeking to interdict a defendant bears the burden of proof by clear and convincing evidence. La. C.C.P. art. 4548. “A judgment of interdiction is, in the final analysis, a pronouncement of civil death without the dubious advantage of an | ¿inscription thereof on a tombstone.” Doll v. Doll, 156 So.2d 275, 278 (La.App. 4th Cir.1963). Thus, “interdiction cannot be used as a matter of convenience.” Interdiction of Lemmons, 511 So.2d 57, 59 (La. App. 3rd Cir.1987).

LEGAL STANDARD FOR INTERDICTION

Petitioners assert that the trial court erred by applying the incorrect legal standard for interdiction. Petitioners contend that the trial court “merely found” that Mr. Benson is only “sometimes” able to make reasoned decisions. Further, Petitioners assert that the trial court “confuse[d] the standard for interdiction with the standard for testamentary capacity, which permits decedents to make wills during a lucid interval.” Lastly, Petitioners aver that the trial court should have examined how Mr. Benson “functions on his worst day, at his baseline level of confusion and forgetfulness.”
La. C.C. art. 389 provides that a court may order the interdiction of a person who is unable “consistently to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.” Comment (d) to La. C.C. art. 389 states that:
A person is unable consistently to make reasoned decisions if, for example, he suffers from an infirmity which intermittently deprives him of reason. A person who experiences periodic deprivations of reason can inflict substantial harm to himself or his property during such bouts and is a candidate for full interdiction. In short, that a person suffering from an infirmity may experience lucid intervals does not render him ineligible for full interdiction.
Contrary to Petitioners’ assertions, the trial court recited the law of La. C.C. art. *956 389, and the key word “consistently,” nu-mei’ous times in its reasons for judgment. Additionally, the trial court considered Mr. Benson’s “worst day,” as |7Pecember 19, 2014, the date of the conversation with Mr. Benson that Rita LeBlanc recorded. The trial court did not state that Mr. Benson is “sometimes” able to make reasoned decisions. The trial court weighed the testimony of the witnesses, as well as the opinions of three medical experts, and concluded that “Thomas Milton Benson, Jr., is able to make reasoned decisions as to his person and his property.” Therefore, this Court does not find that the trial court applied the incorrect standard for interdiction because “consistently” is not contained within the trial court’s final statement in the reasons for judgment.

COMPELLING MR. BENSON’S TESTIMONY

Petitioners assert that the trial court erred as a matter of law by not compelling Mr. Benson’s testimony and by refusing to allow cross-examination at the Watermeier hearing.

Watermeier Hearing

The trial court conducted a Watermeier hearing with Mr. Benson prior to trial in an attempt to “have a complete perspective of the case.” See Watermeier v. Watermeier, 462 So.2d 1272, 1275 (La.App. 5th Cir.1985) (the court discusses the usage of a hearing in chambers to determine if a child is competent to testify regarding custody). The trial court “conducted the questioning solely, with counsel for both petitioners and defendant present.” Petitioners’ counsel was not permitted to cross-examine Mr. Benson because the trial court reasoned that: “[h]ow much [Mr. Benson] chooses to subject himself in a court hearing on the record in the defense of himself is his decision. If he chooses to take the stand, as indicated, he will be subject to cross-examination.”

La. C.C.P. art. 4547

Petitioners contend that the trial court “overreached by making a blanket landing that a proposed interdict has the right not to testify.”
La. C.C.P. art. 4547 provides that a proposed interdict “has a right to be present at the hearing and the court shall not conduct the hearing in his absence, unless the court determines that good cause exists to do so.” Further, “[t]he defendant has the right to present evidence, to testify, to cross-examine witnesses, and to otherwise participate at the hearing.” La. C.C.P. art. 4547. The codal article does not contain an explicitly defined right not to testify. Accordingly, we must interpret La. C.C.P. art. 4547 to examine the rights of a proposed interdict.
“When statutes are clear and unambiguous, no further inquiry may be made into legislative intent.” Abuan ex rel. Valdez v. Smedvig Tankships, Ltd., 00-1120, p. 4 (La.App. 4 Cir. 4/11/01), 786 So.2d 827, 831. See also La. C.C. art. 9. “Courts must apply the law as written, unless the application would lead to absurd consequences.” Id.
While La. C.C.P. art. 4547 does not explicitly include the right of a proposed interdict not to testify, the statute does provide that the proposed interdict has a right to testify. As opposed to stating that the proposed interdict shall testify, there is an indication that the proposed interdict has a choice of whether to testify. This statutory interpretation also coincides with the intent of the entire interdiction process: the protection of the proposed interdict. An interpretation of La. C.C.P. art. 4547, which would require a proposed interdict to testify if requested by the parties seeking the interdiction, would result in the absurd consequence of a proposed *957 interdict possibly testifying against himself or herself. Again, the concept belies the intent behind the interdiction statutes, which is to protect the proposed interdict.
Whether a proposed interdict must testify at the trial on his interdiction has | ¡¡yet to be addressed in Louisiana. However, New York courts have addressed this issue.[5] In In re Allers, 37 Misc.3d 418, 948 N.Y.S.2d 902, 906 (N.Y.Sup.Ct.2012), the court held that an alleged incapacitated person (“AIP”) was not required to testify against himself. Quoting 1 Abrams, Guardianship Practice in New York State, Ch. 12, § VI, at 588, the court reiterated that: “Simply put, the burden is on the petitioner to prove incapacity, not on the AIP to disprove it.” Id. Likening the proceedings against an AIP to criminal proceedings, another New York court found that if an AIP has the right to counsel,[6] then “he or she should also have the right to remain silent on the advice of that counsel.” In re United Health Servs. Hosps., Inc., 6 Misc.3d 447, 785 N.Y.S.2d 313, 316 (N.Y.Sup.Ct.2004). Further, the court stated that “[t]he potential deprivation of liberty in Article 81[7] mental hygiene proceedings is potentially the same as or even more severe than the deprivation of liberty in juvenile eases.” United Health, 785 N.Y.S.2d at 316. “In both situations the respondent can be placed in an institution against his or her will.” Id. The court reasoned that due process comports with the extension of the Fifth Amendment to “proceedings where a person’s life and liberty is at risk due to allegations of mental illness or incapacity.” United Health, 785 N.Y.S.2d at 317. Holding that the petitioner could not shift the burden of proof to the AIP by forcing the AIP to testify, the court found that due process requires nothing less than granting AIPs the right to remain silent and refuse to testify. Id.
The New York jurisprudence is well-reasoned and comports with our statutory interpretation of La. C.C.P. art. 4547. Accordingly, based on our | minterpretation of La. C.C.P. art. 4547 and the intent of the codal articles on interdiction, we find that the right not to testify is implicitly included in La. C.C.P. art. 4547.

Due Process

Petitioners also contend that their due process rights were violated because they were not permitted to cross-examine Mr. Benson even though the trial court questioned him during the Watermeier hearing.
La. C.E. art. 614 provides that “[t]he court, at the request of a party or if otherwise authorized by legislation, may call witnesses, and all parties are entitled to examine witnesses thus called.” La. C.E. art. 614(A). The trial court has the discretion to limit testimony. “[T]he trial court’s discretionary authority to disallow testimony at trial should be exercised only when the ends of justice dictate exclusion of the witness.” Richardson v. Amos, 42,948, p. 7 (La.App. 2 Cir. 3/19/08), 978 So.2d 1184, 1188.
The trial court examined Mr. Benson, on the record, and in the presence of counsel for both sides. However, we note that the trial court did not call Mr. Benson as a *958 witness at trial. Petitioners were permitted to put on evidence to prove that Mr. Benson should be interdicted. Additionally, the interdiction articles were created for the protection of the proposed interdict, not the petitioner. Given the trial court’s broad discretion in limiting testimony in a bench trial, and that Mr. Benson was not called as a witness pursuant to La. C.E. art. 614(A), we do not find that the trial court erred.

Uncalled Witness Presumption

Petitioners also assert that the trial court erred by not applying an adverse presumption.
hiThis Court noted that:
the purpose of the adverse presumption is that “a court may consider the fact that a party did not call a witness, available only to that party, with knowledge of facts not testified to by any other witness, which are pertinent to the case. Once a party makes a showing of this, and the other party does not produce a reasonable explanation for its failure to call that witness, the court may presume that the witness’ testimony would have been unfavorable.”
Roth v. New Hotel Monteleone, L.L.C., 07-0549, p. 6 (La.App. 4 Cir. 1/30/08), 978 So.2d 1008, 1012, quoting Gurley v. Schwegmann Supermarkets, 617 So.2d 41, 44 (La.App. 4th Cir.1993). This Court further found that “the application of an adverse presumption against the party who does not produce a witness is discretionary on the part of the district court.” Roth, 07-0549, p. 6, 978 So.2d at 1012. This Court also held that a trial court’s refusal to apply the adverse presumption is not an abuse of discretion “where the witness’s testimony would be cumulative; where the party seeking to avail itself of the negative inference has the burden of proof on the issue that would be addressed by the witness’s testimony; and where the witness is equally available to the opposing party.” Moretco, Inc. v. Plaquemines Par. Council, 12-0430, p. 18 (La.App. 4 Cir. 3/6/13), 112 So.3d 287, 296-97. Two of the three situations enumerated above are present in the matter sub judice. Mr. Benson’s testimony would have been cumulative of the lay and expert witnesses who testified that Mr. Benson has some difficulty with his short-term memory. Also, Petitioners bore the burden of proof regarding Mr. Benson’s alleged need for an interdiction.
Given our discussion above regarding the right of a proposed interdict not to testify, it would be contradicatory to hold that any proposed interdict who does not take the stand in his defense would be subject to an adverse presumption. Additionally, the adverse presumption is a discretionary tool. Therefore, we do not [ 12fmd that the trial court abused its vast discretion by refusing to apply the adverse presumption because Mr. Benson did not take the stand.

Burden of Clear and Convincing Evidence

Dr. Bloch, Petitioners’ medical expert, testified in his deposition that he was convinced Mr. Benson should be interdicted, but that he “wasn’t clear” because he did not have clear and convincing evidence. However, after listening to the other witnesses for Petitioners, Dr. Bloch stated that he now had clear and convincing evidence to support the interdiction of Mr. Benson based on their testimony.
Conversely, Dr. Sakauye disagreed with Dr. Bloch’s conclusions and testified that Mr. Benson should not be interdicted. Dr. Sakauye found that Mr. Benson suffered from a mild functional impairment of the thought process, but that did not prevent him from consistently making reasoned decisions. Further, Dr. Sakauye testified that Mr. Benson’s level of impairment is *959 “very common” in elderly persons. Similarly, Dr. Thompson testified that Mr. Benson should not be interdicted. Dr. Thompson stated that Mr. Benson’s “mild cognitive impairment” is common in the elderly. Dr. Thompson found that Mr. Benson was “capable of making consistent reasoned decisions.”
Pursuant to La. C.C.P. art. 4548, Petitioners bore the burden of proving by clear and convincing evidence that Mr. Benson should be interdicted. Mr. Benson was not required to take the stand to disprove Petitioners’ claims. The trial court was presented with vast amounts of conflicting medical and lay testimony supporting the trial court’s ruling not to interdict Mr. Benson.

Harmless Error

Even if the trial court erred by refusing to permit Petitioners to cross-examine Mr. Benson, the error was harmless because the trial court judge was the 1 i.qfactfmder. “The effect of an erroneous evidentiary ruling is governed by La. C.E. art. 103, which provides that ‘[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.’” Arceneaux v. Amstar Corp., 06-1592, pp. 36-37 (La.App. 4 Cir. 10/31/07), 969 So.2d 755, 779, quoting La. C.E. art. 103. “The concept of ‘substantial right’ as used in Article 103 is ‘a kin to the familiar ‘harmless error’ doctrine applicable in both civil and criminal matters.’ ” Arceneaux, 06-1592, p. 37, 969 So.2d at 779, quoting George Pugh, Robert Force, Gerald Rault, Jr. and Kerry Triche, Handbook on Louisiana Evidence Law, p. 300 (2006 Ed.). “The jurisprudence has ‘properly taken the view that the risk of prejudice is often less likely in a bench trial than in a jury trial.’ ” Id.
We do not find that a substantial right of Petitioners was violated because the trial court prevented the cross-examination of Mr. Benson. The trial court judge heard the competing testimony of fact and expert witnesses on both sides, and conducted the Watermeier hearing of Mr. Benson prior to issuing judgment. Accordingly, we find that even if the trial court erred by preventing the cross-examination of Mr. Benson, the error was harmless when viewed in light of the facts and circumstances of the present matter, which was a bench trial.

OUT-OF-COURT STATEMENTS

Petitioners assert that the trial court erred by admitting out-of-court statements of Mr. Benson and excluding the transcript of Mr. Benson’s medical examination.

Statements

We hold that the trial court did not err by admitting out-of-court statements of Mr. Benson for the following reasons.
114“ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). “Hearsay is not admissible except as otherwise provided by this Code or other legislation.” La. C.E. art. 802. However, there are exceptions to the hearsay rules.
The Louisiana Supreme Court held that statements “to illustrate the impact and consequent effect that the out-of-court statement had upon the state of mind of the listener or to illustrate the state of mind of the speaker” are nonhear-say and admissible. Buckbee v. United Gas Pipe Line Co., Inc., 561 So.2d 76, 80 (La.1990). “The exception is based on the belief that a spontaneous expression of a declarant’s condition at the time the statement is made is generally a reliable indicator of the declarant’s state of mind.” State v. Magee, 11-0574, p. 43 (La.9/28/12), 103 *960 So.3d 285, 316. “[Wjhether the declaration is a direct assertion of the speaker’s state of mind (hearsay) or, whether the declaration tends to indirectly establish the declarant’s state of mind (non-hearsay), Louisiana jurisprudence admits.the declaration if the declarant’s state of mind is at issue or is relevant to prove a fact at issue.” State v. Brown, 562 So.2d 868, 878 (La.1990). “A state of mind declaration is relevant if it has a tendency to make the existence of any consequential fact more or less probative than it would otherwise be without the evidence.” Id. “Nevertheless, relevant declarations may be legally inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misapplication by the jury.” Id.
Upon our review of the record, the majority of the statements are not hearsay because they were not admitted to prove the truth of the matter asserted, but rather to demonstrate Mr. Benson’s state of mind. Further, many of the statements 11fiadmitted go to evidence of Mr. Benson’s “[t]hen existing mental, emotional, or physical condition.” La. C.E. art, 803(3). However, any hearsay statements that were admitted resulted in a harmless error, “The admissibility of evidence in a judge trial is different- from the requirements of jury trials.” Jenkins v. Baldwin, 00-0802, p. 8 (La.App. 4 Cm. 8/29/01), 801 So.2d 485, 492. “A judge, unlike a jury, by virtue of the judge’s training and knowledge of the law is fully .capable of disregarding any impropriety.”[8] Id. “[improperly introduced hearsay evidence will be considered harmless error if it is found to be cumulative and corroborative of other properly admitted evidence and did not contribute to the verdict. State v. Falkins, 12-1654, pp. 23-24 (La.App. 4 Cir. 7/23/14), 146 So.3d 838, 853.
The record indicates that the trial court considered thousands of pages of medical records, opposing medical expert testimony, as well as opposing lay witnesses. The record was replete with evidence that Mr. Benson should not be interdicted. Accordingly, the trial court judgment “was surely unattributable to any error in admitting” hearsay statements. Falkins, 12-1654, p. 24,146 So.3d at 853.

Medical Examination

The trial court excluded the transcript of Mr. Benson’s medical examination because it did not comport with La. C.E. art. 803(4). La. C.E. art. 803(4) provides that:
[statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment
11 fiare an exception to hearsay rules. Petitioners disagreed with the trial court, and aver that the transcript is non-hearsay evidence pursuant to La. C.E. 801(D)(2), as a “[p]ersonal, adoptive, and authorized admission.” Petitioners also contend that the exclusion was “extremely prejudicial.”
The transcript was created to assist the three medical experts in preparation of their reports for trial. All three experts agreed that the transcript would only be used by them. The trial court is vested with great discretion on evidentiary mat *961 ters. Guillot v. Daimlerchrysler Corp., 08-1485, p. 21 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 190. Therefore, a trial court’s exclusion or inclusion of evidence will not be reversed absent an abuse of discretion. Id.
We agree with the trial court’s conclusion that the transcript was not created while Mr. Benson was seeking treatment or a diagnosis. Thus, we do not find that the trial court abused its discretion by excluding the transcript. As to Petitioners’ claims of extreme prejudice, we find that claim lacks merit. The trial court judge reviewed all of the reports written as a result of Mr. Benson’s medical examination prior to rendering judgment. Also, as the one and only factfinder in a bench trial, the possible effect of prejudice on the trial court judge is less likely. See Arcen-eaux, 06-1592, p. 37, 969 So.2d at 779.

ATTORNEYS’ FEES

Mr. Benson contends that the trial court erred in denying his Motion for New Trial, and that we should remand this matter to the trial court for the limited purpose of ascertaining the quantum of attorneys’ fees.
La. C.C.P. art.1971 provides that “[a] new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.” “A new trial 117may be granted in any ease if there is good ground therefor, except as otherwise provided by law.” La. C.C.P. art.1973.
La. C.C.P. art. 4550 provides that “[t]he court may render judgment for costs and attorney fees, or any part thereof, against any party, as the court may consider fair.” The statute states that the trial court “may” award attorneys’ fees. Therefore, vast discretion is vested with the trial court. In the ease sub judice, the trial court judge determined that no award of attorneys’ fees was warranted. After reviewing the record, we find that the trial court did not abuse its vast discretion by refusing to award Mr. Benson attorneys’ fees, and affirm.

DECREE

For the reasons elaborated herein, we find that a proposed interdict is not required to testify at trial, pursuant to La. C.C.P. art. 4547. The trial court did not abuse its discretion by admitting out-of-court statements of Mr, Benson, and did not err by excluding the transcript of Mr. Benson’s medical examination. The trial court also applied the correct legal standard for interdiction. Lastly, the trial court did not err by refusing to award attorneys’ fees. Therefore, we affirm the trial court’s dismissal of Petitioners’ suit, as well as the denial of Renee Benson’s and Rita Le-Blanc’s prayers that they be appointed as curatrix and undercuratrix, respectively, of Mr. Benson’s property and person.
AFFIRMED
TOBIAS, J., concurs and assigns reasons.

. Renee Benson is the daughter of Mr. Benson,

. Rita and Ryan LeBlanc are Renee’s children, and Mr. Benson’s grandchildren.

.This matter was sealed pursuant to a protective order in the trial court, and the hearings were closed to the public. See In re Interdiction of Benson, 15-0589, unpub. (La.App. 4 Cir. 5/29/15); La. C.C.P. art. 4547.

. Petitioners contend that legal errors committed by the trial court warrant a de novo review. For the reasons stated herein, we do not find that the trial court committed legal errors sufficient to warrant the use of our de novo review.

. We note that New York jurisprudence is persuasive and not controlling,

. Louisiana provides that an attorney shall be provided for a proposed interdict unless private counsel is retained or waived. See La. C.C.P. art. 4544.

.New York’s Article 81 proceedings against an AIP are similar to Louisiana’s interdiction proceedings.

. Petitioners also contend that the trial court erred by admitting the video tape of Mr. Benson executing his will. As discussed above, the trial court possesses great discretion on evidentiary rulings, and, as this was a bench trial, the trial court judge was in the position of disregarding any impropriety.