# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2024 CA 0460

## ANDRE LEE

### VERSUS

## SMITTY'S SUPPLY, INC.

Judgment Rendered: **DEC 2 0 2024**

* * * * *

On Appeal from the
Office of Workers' Compensation, District 6
In and for the Parish of St. Tammany
State of Louisiana
No. 22-03078

The Honorable Diane Lundeen, Workers' Compensation Judge Presiding

* * * * *

| | |
|---|---|
| Brad O. Price<br>Denham Springs, Louisiana | Attorney for Plaintiff-Appellee,<br>Andre Lee |
| Frank R. Whiteley<br>Robert J. May<br>New Orleans, Louisiana | Attorneys for Defendant-Appellant,<br>Smitty's Supply, Inc. |

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

1

**WOLFE, J.**

In this workers' compensation case, the employer, Smitty's Supply, Inc. ("Smitty's"), appeals a judgment which found that the claimant/employee, Andre Lee ("Lee"), was injured during the course and scope of his employment with Smitty's, and further awarded Lee total temporary disability benefits, medical expenses, penalties, and attorney's fees as a result thereof. Lee answered the appeal, seeking additional attorney's fees. For the following reasons, we vacate the judgment in part, amend the judgment in part, and as amended, affirm. Further, we deny the answer to the appeal.

## FACTS AND PROCEDURAL HISTORY

On April 21, 2022, Lee was hired by Smitty's as a full-time employee. Although Lee was trained as a forklift operator, he never actually performed this task, but was instead assigned to the yard, where he drove trucks, connected them to oil tanks, and assisted with unloading oil. As part of his training, Lee was issued a pair of rubber boots, which were regularly covered in oil due to his job requirements and duties. Although Smitty's would occasionally place cloth towels over the acceleration and brake pedals in the yard trucks, Lee's feet would nevertheless slip off the pedals.

During a night shift on May 11, 2022, Lee was operating a yard truck, attempting to back into a location, but as he did, his foot slipped off the brake pedal, resulting in him hitting another truck parked immediately in front of him. Lee operated a different vehicle each day, but as to this particular vehicle, Lee noted it was "kinda hard to shift." Lee stated he did not intend to hit the truck, that he was nervous when he did, and that once he was able to back the truck into an appropriate location, he went to look for his supervisor, Rodney Baye ("Baye"). Before Lee was able to locate Baye, Lee found a co-worker, Jessie Hughes ("Hughes"), and proceeded to describe the accident. According to Lee, he was limping, his legs and

2

back were "bothering" him, and his "foot was hurtin[g]." Hughes noticed that, as Lee described the accident to him, a dent was present on the driver's side of the vehicle Lee was operating. Lee and Hughes then located Baye, Lee described to Baye the circumstances of the accident, indicated to Baye he believed he was injured, and stated that his foot "was hurtin[g]." Hughes also confirmed that he informed Raymond Smith ("Smith"), another supervisor, and "Tony," the "safety guy," about the accident. After a phone call between Baye and Smith, Lee was instructed to stay at Smitty's and finish his shift, which he did. Hughes testified Baye provided Lee an incident report form to complete. Hughes did not observe what took place thereafter. Ultimately, the parties stipulated that Lee was involved in a work-related accident, while employed with Smitty's, on May 11, 2022.

On the night of the accident, Lee provided a written statement describing what transpired. The following morning, Lee received a phone call from "somebody" at Smitty's, informing him he needed to come in and talk about the accident. Upon his arrival, Lee was taken by the "safety man" for a drug test. Lee testified that he told this individual "about [his] foot." When asked what kind of issues he was having with his foot, Lee explained that his foot hurt because it "really got stuck up under the gas pedal because it slipped up off there." Lee further testified that his foot was swollen and it was causing him to limp. Following the drug test, Lee was returned to Smitty's. Lee remained in his personal vehicle until the start of his next shift, approximately four hours later. After beginning his shift, Lee again found and reported to Smith his foot was hurt; Smith then told Lee to report the injury to Baye, which Lee did. Lee worked his complete shift that night. However, the following day - Friday, May 13, 2022 - when Lee reported to Smitty's for work, he was met at the gate by Baye and fired. The termination paperwork stated Lee did "not report … an incident resulting in damaging company property."

3

Lee filed a workers' compensation claim against Smitty's on June 9, 2022, seeking to recover medical benefits, indemnity benefits, and penalties and attorney's fees due to the denial of his claims for indemnity and medical benefits. Smitty's answered Lee's claim on July 6, 2022, admitting Lee worked at Smitty's at the time of the accident, but denying all of his other claims. The trial was held on October 4, 2023. The workers' compensation judge ("WCJ") issued written reasons for judgment and signed a judgment in accordance with those reasons on January 19, 2024. The WCJ found Lee sustained an accident in the course and scope of his employment and that his injuries from the accident required medical care. The WCJ ordered Smitty's to pay for outstanding medical expenses totaling $11,079.82 to Elite Chiropractic. The WCJ also determined Lee was entitled to total temporary disability benefits from May 26, 2022 to November 10, 2022, for a total of $13,121.64. Additionally, the WCJ assessed penalties of $2,000.00 for Smitty's failure to timely pay necessary medical expenses, as well as another penalty of $2,000.00 for Smitty's failure to timely pay indemnity benefits. Further, the WCJ awarded Lee's counsel $4,000.00 in attorney's fees against Smitty's for its failure to timely authorize and pay for necessary medical expenses, as well as a second award of $4,000.00 in attorney's fees against Smitty's for its failure to timely pay indemnity benefits. The WCJ found that Smitty's failed to establish it reasonably controverted these requests. The WCJ taxed costs of $1,695.85 against Smitty's. Smitty's now appeals this judgment.

## STANDARD OF REVIEW

Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. **Shelton v. Smitty's Supply, Inc.**, 2017-1419 (La. App. 1st Cir. 6/12/18), 253 So.3d 157, 163, writ denied, 2018-1195 (La. 11/14/18), 256 So.3d 258, and writ denied, 2018-1199 (La. 11/14/18), 256 So.3d 291. An appellate court cannot set aside the factual findings of the WCJ unless

4

it determines there is no reasonable basis for the findings and the findings are clearly wrong (manifestly erroneous). **Id.** If the WCJ's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier-of-fact, it would have weighed the evidence differently. **Id.** Furthermore, when factual findings are based on the credibility of witnesses, the factfinder's decision to credit a witness's testimony must be given "great deference" by the appellate court. **Id.** Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. **Id.** Determinations as to whether the employee has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. **Young v. Smitty's Supply, Inc.**, 2023-0092 (La. App. 1st Cir. 9/29/23), 376 So.3d 903, 907-08, <u>writ denied</u>, 2023-01570 (La. 1/24/24), 378 So.3d 68.

## DISCUSSION

### *Assignments of Error Nos. 1 & 2 – Lee's Injury and Disability Benefits*

Initially, Smitty's argues Lee failed to successfully carry his burden of proving he was injured during the course and scope of his employment. Specifically, Smitty's claims, "the circumstances immediately following [Lee's] accident do not corroborate his story that he was injured when his truck bumped into another vehicle. Furthermore, the discrepancies between plaintiff's testimony and the video of the accident, the medical records and the testimony of other witnesses, cast serious doubt on [Lee's] story that his 'fender bender' caused him to be injured." This, Smitty's further argues, demonstrates that Lee "did not provide clear and convincing evidence that he was physically unable to engage in any employment, and, therefore, the [WCJ] erred in awarding temporary total disability benefits."

5

It is a well-settled principle that the provisions of the workers' compensation scheme should be liberally interpreted in favor of the worker. **Scott v. Wal-Mart Stores, Inc.**, 2003-0858 (La. App. 1st Cir. 2/23/04), 873 So.2d 664, 668. In order for a claimant to be entitled to recover workers' compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. **Williams v. Wal-Mart Stores, Inc.**, 2000-1347 (La. App. 1st Cir. 9/28/01), 809 So.2d 294, 298. While the claimant must show that his employment somehow caused or contributed to the disability, he need not establish the exact cause. **Elswick v. Highway Transport**, 96-0014 (La. App. 1st Cir. 9/27/96), 680 So.2d 1364, 1367.

In workers' compensation cases, a disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident, and the symptoms of the disability appear after the accident and continue to manifest themselves. This presumption is available when sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural inference that such a causal connection exists. **Williams**, 809 So.2d at 298. Thus, in determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. **Id.** at 298.

On May 16, 2022, Lee visited Lallie Kemp Regional Medical Center where he stated he was a "restrained driver in an 18-wheeler on work property when he 'bumped' into a similar vehicle" and sought an evaluation for back pain. Lee was diagnosed with lumbar strain. On May 20, 2022, Lee returned to Lallie Kemp with complaints of right foot pain. Though no swelling or external deformity of the ankle was identified, an x-ray of Lee's right foot revealed some irregularities.

Thereafter, Lee treated with Elite Chiropractic from May 26, 2022 through November 10, 2022. On the initial visit, Lee reported he immediately felt "aching, sharp, tingling and burning" in his right ankle after the accident and, since that time, the use and function of his ankle declined. Lee also complained of thoracic and lumbar strain, which he attributed to the May 11, 2022 accident. After an examination, Dr. Pell with Elite Chiropractic placed Lee on temporary total disability status for six weeks and did not release him to return to work. On subsequent visits at Elite, Lee's complaints remained consistent.

In written reasons for judgment rendered on January 19, 2024, the WCJ noted Smitty's "did not have any medical evidence to refute Elite Chiropractic's records demonstrating that the accident caused [Lee's] injuries. Based on the totality of the evidence, [Lee] carried his burden to demonstrate that his back, neck, and ankle injuries were caused by and/or aggravated by the accident at work." The WCJ concluded, "[Lee's] injuries were related to the May 11, 2022, accident; therefore, he was entitled to all reasonable and necessary treatment for that injury without approval from Smitty's."

As previously indicated, the determinations by the workers' compensation judge as to whether Lee discharged his burden of proof are factual determinations that will not be disturbed on review in the absence of manifest error. In this case, implicit in the WCJ's ruling is a finding that Lee was a credible witness and concluded that the medical evidence showed a reasonable connection between the

7

work-related accident and Lee's injuries. Based on a complete review of the record, we cannot say that the WCJ was clearly wrong in finding that Lee proved, by a preponderance of the evidence, that he was injured in the May 11, 2022 accident at Smitty's. See **Williams**, 809 So.2d at 299.

Moreover, and for the same reasons, we cannot say the WCJ erred in awarding Lee temporary total disability payments. Temporary total disability means the inability to engage in any gainful occupation, whether or not it is the same or one similar to that in which the employee was customarily engaged when injured. La. R.S. 23:1221(1)(a). A workers' compensation claimant seeking temporary total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. Whether a claimant is entitled to temporary total disability indemnity benefits is a factual finding and, hence, subject to the manifest error or clearly wrong standard of appellate review. This factual finding by the WCJ should be given great weight and should not be overturned absent manifest error. **Neal v. St. Tammany Parish Hospital**, 2018-0105, 2018-0106 (La. App. 1st Cir. 10/31/18), 267 So.3d 158, 163. Again, we find no manifest error in the WCJ's decision to award temporary total disability payments to Lee, especially in light of the medical records from Elite Chiropractic.

Accordingly, these assignments of error lack merit.

### *Assignments of Error Nos. 3 & 4 – Exclusion of Deposition Testimony from Trial*

Second, Smitty's asserts the WCJ erred in prohibiting the deposition transcripts of Baye and Smith, Lee's supervisors on the night of the accident, from being used at the hearing in lieu of their live testimony. Additionally, due to this exclusion, Smitty's argues the WCJ further erred by not applying the presumption that such excluded testimony was inherently adverse to Lee's claims.[1]

---

[1] Jurisprudence refers to this presumption as the "uncalled witness" rule. See **Roth v. New Hotel Monteleone, L.L.C.**, 2007-0549 (La. App. 4th Cir. 1/30/08), 978 So.2d 1008, 1012.

On October 4, 2022, Lee took the depositions of both Baye and Smith. Further, in his pre-trial statement, Lee listed Baye and Smith as fact witnesses and included, among his documentary evidence, "[a]ny deposition testimony taken in this case." However, on the morning of the hearing, Lee objected to Smitty's use and attempted introduction of the deposition transcripts, as both individuals were not present at the hearing and Smitty's did not provide an explanation regarding their unavailability. Further, it is undisputed that Smitty's issued a subpoena to both men for their appearance at the hearing, but at the time the subpoenas were issued, Smitty's no longer employed Baye or Smith, a fact, Lee argues, "Smitty's would know." However, no subpoenas concerning the two men were actually offered or introduced at the hearing. Smitty's responded, generally noting Lee identified the two men in his pre-trial statement, but that it does not "have control over the witnesses [... and] [t]his isn't a surprise to [Lee]." Smitty's did not otherwise offer any argument or documentation to show what efforts were made to notify the two men of their appearance at the hearing. The WCJ took the matter under advisement, but later excluded the deposition transcripts based on the lack of an adequate showing of unavailability pursuant to Louisiana Code of Civil Procedure article 1450. The WCJ granted Smitty's request to proffer the deposition transcripts.

Louisiana Code of Civil Procedure article 1450 provides, in pertinent part, that the deposition of a witness may be used by any party for any purpose if the court finds that "the witness is unavailable ... [or] [u]pon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." La. Code Civ. P. art. 1450(A)(3)(a) and (c). The trial court has much discretion under Article 1450 in determining whether to allow the use of deposition testimony at trial, and its decision will not be

disturbed on review in the absence of an abuse of that discretion. **Sullivan v. City of Baton Rouge**, 2014-0964 (La. App. 1st Cir. 1/27/15), 170 So.3d 186, 193.

Although Article 1450 does not specify when a witness is "unavailable," Louisiana Code of Evidence article 804 provides, in pertinent part, that a declarant is "unavailable as a witness" when he "cannot or will not appear in court and testify," including when he is "absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." La. Code Evid. art. 804(A)(5). The party asserting the admissibility of a deposition under Article 1450 must show that the witness is unavailable for trial. See **Sullivan**, 170 So.3d at 193-94; see also **Montgomery v. Breaux**, 297 So.2d 185, 189 (La. 1974). The determination of whether a witness is unavailable is a preliminary question for the trial court and such determinations are reviewed for manifest error and will not be overturned, absent an abuse of the trial court's discretion. See **Sullivan**, 170 So.3d at 194; see also **Martin v. Francis**, 600 So.2d 1382, 1386 (La. App. 1st Cir.), writ denied, 606 So.2d 541 (La. 1992) (recognizing that the trial court is vested with broad discretion in determining whether a witness is unavailable within the meaning of Article 1450).

As noted, on the morning of the hearing, Smitty's offered no argument or explanation regarding Baye and Smith's absences. Further, during the testimony of Jaye Collura ("Collura"), Smitty's Human Resources manager, she admitted to receiving subpoenas for Baye, Smith, and Hughes, and testified she made arrangements for Hughes' appearance, but offered no explanation as to Baye or Smith. Moreover, Collura indicated that the last known addresses for Baye and Smith were in their respective personnel files, but that Smitty's made no effort to serve any subpoena to them at their last known address or otherwise call them. It is clear subpoenas were issued to Smitty's for Baye and Smith's appearance, but Smitty's made no attempt to arrange their appearance for the hearing. Further,

10

although Lee noticed and took the two depositions, he claims he learned on the morning of the hearing that both Baye and Smith were unavailable, effectively depriving him of cross-examination. While we recognize that the rules of evidence and procedure are relaxed in workers' compensation proceedings,[2] such proceedings are nonetheless lawsuits to be conducted in conformity with the accepted standards of practice and procedure. See **Taylor v. Tommie's Gaming**, 2004-2254 (La. 5/24/05), 902 So.2d 380, 383. Accordingly, we find no abuse of discretion in the WCJ's determination that Smitty's failed to notify the parties of or otherwise explain Baye and Smith's unavailability at the hearing, and that their deposition transcripts could not be offered into evidence in lieu of their live testimony.

Also, as Lee did not know until the morning of the hearing that Smitty's intended to introduce the deposition transcripts from Baye and Smith, the uncalled witness rule is not applicable, despite Smitty's argument to the contrary. The "uncalled witness" rule has been defined as an adverse presumption that arises when a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence and fails to call such witnesses. A party's failure to call such witnesses gives rise to the presumption that the witnesses' testimony would be unfavorable to him. **Roth v. New Hotel Monteleone, L.L.C.**, 2007-0549 (La. App. 4th Cir. 1/30/08), 978 So.2d 1008, 1012, citing, **Taylor v. Entergy Corp.**, 2001-0805 (La. App. 4th Cir. 4/17/02), 816 So.2d 933, 941. The application of an adverse presumption against a party who does not produce a witness is discretionary on the part of the court. It is well within the discretion of the trial court to decide not to apply an adverse presumption. **Roth**, 978 So.2d at 1012. As Smitty's issued the subpoenas for Baye and Smith, knew both men were no longer employed by Smitty's, knew of their last known mailing addresses yet made no attempt to contact

---

[2] Louisiana Revised Statutes 23:1317(A) provides, in pertinent part, that, "[t]he workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence[.]"

11

them, and was the party seeking the introduction of the deposition transcripts, we find the WCJ did not err in failing to apply the "uncalled witness" rule. The rule is intended to punish parties who are withholding witness testimony, not to penalize parties who do not have the power to produce witnesses to testify. **Id.** If anything, Smitty's is the party against whom the "uncalled witness" rule should apply. As such, under the facts and circumstances presented herein, this rule has no application.

Accordingly, we find no merit to these assignments of error.

### *Assignments of Error Nos. 5 & 6 – Penalties and Attorney's Fees*

Lastly, Smitty's submits the WCJ erred in awarding Lee penalties and attorney's fees pursuant to La. R.S. 23:1201(F), arguing it "reasonably controverted [Lee's] claim based [on] the circumstances surrounding [the] accident, the discrepancies between [Lee's] story and the medical evidence, and the testimony that directly contradicted [his] testimony." In the January 19, 2024 judgment, the WCJ levied penalties against Smitty's in the amount of $2,000.00 for its failure to timely pay for necessary medical care and an additional $2,000.00 in penalties for Smitty's failure to timely authorize indemnity benefits. Additionally, the WCJ levied awards of attorney's fees in the amount of $4,000.00 for Smitty's failure to timely pay for necessary medical care and an additional $4,000.00 for Smitty's failure to timely authorize indemnity benefits.

Under La. R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney's fees for failure to timely pay indemnity or medical benefits where the employer or insurer has failed to reasonably controvert the claim. See La. R.S. 23:1201(F)(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant. **Clark v. Godfrey Knight Farms, Inc.,** 2008-1723 (La. App. 1st Cir. 2/13/09), 6 So.3d 284, 297, writ denied, 2009-0562 (La. 5/29/09), 9 So.3d 163.

Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. **Authement v. Wal-Mart**, 2002-2434 (La. App. 1st Cir. 9/26/03), 857 So.2d 564, 574. The claimant bears the burden of proving his entitlement to statutory penalties and attorney fees due to the employer's failure to timely pay workers' compensation benefits. **Davis v. Farm Fresh Food Supplier**, 2003-1381 (La. App. 1st Cir. 5/14/04), 879 So.2d 215, 220. The crucial inquiry is whether the employer has an articulated and objective reason for denying payment at the time it took that action. See **Lewis v. Temple Inland**, 2011-0729, 2011-0730 (La. App. 1st Cir. 11/9/11), 80 So.3d 52, 58. A determination of whether an employer or insurer has failed to reasonably controvert a claim is a question of fact subject to the manifest error standard of review. **Clark**, 6 So.3d at 297.

On May 19, 2022, Lee made written demand to Smitty's, describing the circumstances surrounding the accident and identifying the medical providers he visited since the accident. Additionally, attached to this letter were discharge instructions from Lee's May 16, 2022 visit with Lallie Kemp Regional Medical Center, which noted Lee was the "[d]river of [a] heavy transport vehicle[, and was] injured in [a] collision with motor vehicle in nontraffic accident[.]" Although this record documents Lee's accident and injuries, it did not disable him. Later, however, on June 7, 2022, Lee again made express written demand on Smitty's for indemnity benefits, and further attached twenty-seven pages of medical care notes from Elite Chiropractic, as well as the patient billing statements totaling $1,432.82, concerning Lee's care from May 25, 2022 through June 3, 2022. In Lee's initial visit to Elite on May 25, 2022, which was provided to Smitty's, the medical notes expressly state he "is placed on T.T.D. (total temporary disability) status for [six] weeks, as of his initial visit to our clinic. His temporary total disability is based on [his inability to] perform job duties as required by employer[.] Therefore, he is not released to return to work at this time. Work status will be re-evaluated when this status has terminated

13

or if the patient has a significant change in his condition." During the hearing, when Collura was questioned over this particular document, she expressly stated she did not take any action when she received it. Further, on each subsequent date Lee visited Elite, as attached to his June 7, 2022 demand letter, it was noted Lee was totally temporarily disabled and unable to return to work.

Medical benefits payable to a workers' compensation claimant must be paid within sixty days after the employer or insurer receives written notice thereof. See La. R.S. 23:1201(E)(1). Where an employer or insurer initially receives a favorable medical report, but later receives information revealing the possibility of a continuing disability, it may not blindly continue to rely on the initial medical report. The employer or insurer has a continuing duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether a claim is compensable before denying benefits. **Shelton**, 253 So.3d at 170.

Herein, Lee's first demand letter was dated May 19, 2022, and his second on June 7, 2022. Further, Lee's claim was filed on June 9, 2022, and Smitty's answered the claim on July 6, 2022, claiming Lee did not have any work-related disability, and was not entitled to any type of indemnification benefits, supplemental earnings benefits, or medical payments. However, the demand letters and the claim made reveal the possibility of a continuing disability, and Smitty's had a continuing duty to investigate and make a reasonable effort to gather information to determine if the claim was compensable before it denied benefits. Moreover, Smitty's denial of Lee's claim came after it was in receipt of multiple records from Elite Chiropractic, which expressly stated Lee was totally temporarily disabled and unable to return to work for at least six weeks. Considering these facts, a thorough review of the record supports the WCJ's finding that Smitty's did not reasonably controvert Lee's claim before denying benefits. Accordingly, the WCJ did not manifestly err in assessing

14

statutory penalties and attorney's fees against Smitty's for its failure to timely pay necessary medical benefits.

Smitty's further argues the WCJ violated La. R.S. 23:1201(J) in rendering *two* attorney's fees awards in the amount of $4,000.00, each in favor of Lee. The WCJ made one award for Smitty's failure to timely pay for necessary medical care in violation of La. R.S. 23:1201(E), and the second award for Smitty's failure to timely pay indemnity benefits in violation of La. R.S. 23:1201(B).

Louisiana Revised Statutes 23:1201(J) provides, in part:

> Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section[.]

Under La. R.S. 23:1201(J), only one award of attorney fees can be made in connection with a hearing on the merits, even when multiple violations have occurred. **Shelton**, 253 So.3d at 171; see also **Russell v. Regency Hospital of Covington, LLC**, 2008-0538 (La. App. 1st Cir. 11/14/08), 998 So.2d 301, 306. Because Lee is entitled to only one award of attorney fees, the WCJ's second award of attorney's fees, in the amount of $4,000.00, for Smitty's failure to timely pay indemnity benefits, must be vacated. See **Shelton**, 253 So.3d at 171.

In his appellee brief, Lee concedes the WCJ erred in making two separate awards of attorney's fees, but argues the award for failure to timely pay necessary medical care of $4,000.00 should be increased, as his counsel's fee statement reflects a total of more than $25,000.00. When attorney fees are awarded in a workers' compensation case, they are deemed to be a penalty and the value of the attorney's fees need not be proven. The worker's compensation court is allowed to call upon its own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case. The amounts awarded in penalties and attorney's fees are entitled to great discretion and will not be disturbed absent an

15

abuse of discretion. Factors usually considered when fixing the amount of attorney's fees to be awarded in workers' compensation cases are (1) the degree of skill and the amount of work involved in the case, (2) the amount of the claim, (3) the amount recovered for the claimant, and (4) the amount of time the attorney devoted to the case. **Rayborn v. Continental Cement Company, LLC**, 2023-0403 (La. App. 1st Cir. 1/10/24), 383 So.3d 225, 238-39, writ denied, 2024-00190 (La. 4/3/24), 382 So.3d 110. After a thorough review of the record, it is apparent the WCJ considered all relevant factors, but committed legal error in awarding two separate awards of attorney's fees in the amount of $4,000.00 each for Smitty's failure to timely pay indemnity benefits and failure to timely pay for necessary medical care. As the award for Smitty's failure to timely pay indemnity benefits is now vacated, we therefore amend the remaining $4,000.00 award for Smitty's failure to timely pay for necessary medical care and increase it to $8,000.00. See **Russell**, 998 So.3d 306-07.

## ANSWER TO APPEAL

In an answer to this appeal, Lee requests an award of additional attorney's fees. Additional attorney's fees are usually awarded on appeal when a party appeals, but obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. **Shelton**, 253 So.3d at 172. In this case, since Smitty's has obtained partial relief on appeal by the removal of the WCJ's second award for attorney's fees due to Smitty's failure to timely pay indemnity benefits, we do not believe an award of additional attorney's fees is appropriate and decline to make such an award to Lee.

## CONCLUSION

For the foregoing reasons, we affirm, in part, the January 19, 2024 judgment, rendered in favor of Andre Lee and against Smitty's Supply, Inc., finding that Andre Lee sustained an injury during the course and scope of his employment on May 11,

2022, and awarding him total temporary disability benefits and medical expenses. However, pursuant to La. R.S. 23:1201(J), we vacate, in part, the portion of the judgment which awards $4,000.00 in attorney's fees to Andre Lee for Smitty's Supply, Inc.'s failure to timely pay indemnity benefits. Nevertheless, we amend the remaining award of $4,000.00 in attorney's fees assessed by the WCJ against Smitty's Supply, Inc. for its failure to timely pay necessary medical benefits, by increasing the award to $8,000.00. Costs of this appeal are assessed one half to the plaintiff/appellee, Andre Lee, and one half to the defendant/appellant, Smitty's Supply, Inc.

**VACATED IN PART, AND RENDERED; AMENDED IN PART, AND AS AMENDED, AFFIRMED; ANSWER TO APPEAL DENIED.**

17