ROLAND L. BELSOME, Judge.
_LiAfter being locked out of their building, the plaintiffs, Arrianne Duhon and Da’ Avenue Sports Bar, LLC,[1] filed this wrongful eviction and conversion suit against the defendant, Charles Briley, Sr. The defendant subsequently filed a reconventional demand for property damage caused by the plaintiffs.
The defendant now appeals the trial court’s judgment awarding the plaintiffs $175,722.99 in damages. On cross-appeal, the plaintiffs challenge the trial court’s judgment awarding the defendant $8,306.13 for property damage. We amend the plaintiffs’ award and affirm as amended.

FACTS AND PROCEDURAL HISTORY

On September 1, 2007, with the intent to operate a sports bar and reception hall, Ms. Duhon, as owner of Da’ Avenue Sports Bar, entered into two separate lease agreements with Mr. Briley for suites A and B located at 4201 Washington Avenue. Her intentions were to operate Da’ Avenue Sports Bar downstairs in Suite B and a reception hall upstairs in Suite A. Both leases were for a term of two 12years,[2] from September 1, 2007 through August 31, 2009, with an option to renew for another two years or to buy the property. In addition to paying a $3,000 security deposits for each unit, Ms. Duhon was to pay $3,000 a month in rent for the reception hall, and $4,000 a month for the sports bar. In order to begin operating her businesses, Ms. Duhon had to perform major renovations to the units. Ms. Duhon’s aunt through marriage, Georgette Lemon, also known as “Queen,” assisted her in her *257 business venture and loaned her the money for the start-up costs.
On June 2, 2008, less than one year into the lease, the defendant changed the locks to the units.[3] The parties disagree as to the circumstances surrounding the lockout.[4] Three days later, the plaintiffs filed suit against the defendant,[5] asserting that he wrongfully evicted them from the leased premises and that he converted their possessions that remained on his property. Meanwhile, after the plaintiffs filed their first supplemental and amending petition, the defendant answered the suit and filed a reconventional demand, alleging that the property was abandoned.
Prior to trial, the plaintiffs filed a second supplemental and amending petition which included a descriptive inventory of items that were allegedly | ¡¡converted by the defendant. The defendant answered the second supplemental petition and amended his reconventional demand to include a request for attorney’s fees.
After trial, the court awarded the plaintiffs $175,722.99 plus legal interest, finding that the defendant wrongfully evicted the plaintiffs and converted their property in bad faith. It also awarded the defendant $8,306.13 plus legal interest for repairs.
This appeal followed.

STANDARD OF REVIEW

In reviewing a trial court’s findings of fact, appellate courts employ a “manifest error” or “clearly wrong” standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. Moreover, when findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id. See also Pelleteri v. Caspian Grp. Inc. 02-2141, 02-2142, pp. 6-7 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1235.
^Regarding issues of law, the standard of review of an appellate court is *258 simply whether the court’s interpretive decision is legally correct. Glass v. Alton Ochsner Medical Foundation, 02-412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405. Accordingly, if the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court. Pelleteri, 02-2141, p. 7, 851 So.2d at 1235 (citation omitted); Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C, 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474.

DISCUSSION

The defendant’s assignments of error focus on two claims: 1) the trial court erroneously found that he wrongfully evicted the plaintiffs when there was evidence to support that the plaintiffs intended to abandon the lease; and 2) the plaintiffs’ damages award was excessive and unsupported by the evidence. On the other hand, the plaintiffs assert that their damages award was too low and that the defendant should not have been awarded any damages for repairs. We will first address the abandonment issue; then, we will address the damages awards, starting with the plaintiffs’ award and finishing with the defendant’s award.

ABANDONMENT

Mr. Briley argues that the trial court erred in finding him liable for damages for wrongful eviction because he was legally justified in retaking possession of the leased property under the reasonable belief that the tenant intended to abandon the premises. He contends that the trial court misunderstood the situation and there was ample evidence to conclude that Ms. Duhon was abandoning the leased property.
| ¡-.Under the provisions of La. C.C. art. 2682, a lessor is bound from the very nature of the contract, and without any clause to that effect to do three things. One of those things is “[t]o protect the lessee’s peaceful possession for the duration of the lease.” La. C.C. art. 2682(3); See also Girgis v. Macaluso Realty Co., Inc., 00-753, p. 4 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, 1212. A lessor who fails to meet his or her obligations under the provisions of La. C.C. art. 2682 by wrongfully dispossessing the lessee of the premises is generally liable for any resulting damages. Id. The Louisiana Code of Civil Procedure provides an exception to that liability where the lessor follows the eviction procedures set forth in arts. 4701-4735. Id.
The record is clear that the defendant failed to follow the required eviction procedure. However, there is also a jurisprudential exception which exempts the lessor from liability for failing to comply with the eviction procedure before taking possession if the lessee unjustifiably abandons the leased premises. Girgis, 00-753, p. 4, 778 So.2d at 1212-13 (citations omitted). “Abandonment of a leased premise ‘requires voluntary relinquishment of the premises by the lessee with the intent to terminate without vesting ownership in another.’ ” Girgis, 00-753, p. 4, 778 So.2d at 1213 (citation omitted). When a lessor is not justified in believing that the leased premises are abandoned, the use of self-help to retake the property constitutes a trespass and wrongful seizure of the lessee’s property. Girgis, 00-753, pp. 4-5, 778 So.2d at 1213 (citation omitted). Abandonment only occurs if the lessee had intent to abandon the premises. Girgis, 00-753, p. 5, 778 So.2d at 1213. Whether a leased premise has been abandoned is a finding of fact subject to the | fimanifest error-clearly wrong standard of review. Girgis, 00-753, pp. 4-5, 778 So.2d at 1213 (citation omitted).
*259 At trial, the defendant testified that he believed that his tenant was moving out. He explained that Ms. Lemon told him that if he did not waive the rent while allowing them to ñx a termite issue in the building, they were going to move. According to his testimony, when he refused, Ms. Lemon told him: “We’re moving.” He stated that on June 1, 2008, he went to the property after receiving a phone call from a neighbor, who informed him that his tenants were moving and that they took the air conditioners. When he arrived, his air conditioning units were missing, and he observed that some of the plaintiffs’ bar equipment had been removed and placed into a U-Haul truck. At that time, he was informed that the truck had hauled two other loads. The defendant also pointed out that Ms. Duhon had not paid the rent; she did not renew the bar’s liquor license, which had expired on the 81st of May; and she never requested to re-enter the leased premises.
To the contrary, Ms. Lemon testified that she never told the defendant that Ms. Duhon was vacating the premises, and that, on June 2, 2008, the defendant locked them out of the building. Consistently, Ms. Duhon testified that she never vacated the premises, she had until June the 5th to pay her rent, and she had only moved some tables used for a wedding reception the previous weekend. She further stated that she had applied to renew her liquor license, but could not obtain one due to the termite infestation. She also stated that the approval was still pending. In addition, she claimed that Mr. Briley attempted to operate his own sports bar after locking them out.
|7Ms. Duhon and the defendant both agreed that she never told him she was leaving the premises. The defendant further acknowledged that Ms. Lemon, one of his primary contacts for the sports bar, requested entrance onto the premises after he had changed the locks, but he denied her entry.[6]
Here, the trial court was faced with two possible interpretations of the evidence: 1) Ms. Duhon moved out intending to abandon the lease; or 2) Ms. Duhon did not move out or intend to abandon the lease. The trial court considered the evidence and found that the defendant wrongfully evicted the plaintiffs from the leased premises. In its oral reasons, the trial court found that the defendant did not prove that Ms. Duhon abandoned the lease. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
The trial court’s conclusion is supported by the record, thus we cannot find manifest error in its ruling that the plaintiffs did not abandon the lease. Since the defendant did not file formal eviction proceedings, the trial court’s judgment determining that the plaintiffs were wrongfully evicted was legally correct. Glass, supra.

DAMAGES

Both the plaintiffs and the defendant contest the damages award. The trial court awarded the plaintiffs $175,722.99 plus legal interest. The trial court also awarded the defendant $8,306.13 plus legal interest.
Rif the lessee is evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of *260 the lease. Pelleteri, 02-2141, p. 13, 851 So.2d at 1238. La. C.C. art.1995 provides that the measure of damages for an obli-gor’s failure to perform a contract is “the loss sustained by the obligee and the profit of which he has been deprived.” La. C.C. art.1999 provides that “[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.” Article 1999 applies to damages from a breach of a contractual obligation.
In Fo-Coin Co. v. Drury, 349 So.2d 382 (La.App. 4 Cir.1977), this Court reiterated that damages from wrongful eviction are not only contractual but also are delictual. This Court stated that “[w]hen a lessor takes the law in his hands by unlawfully dispossessing a tenant, he commits a trespass and is liable for general damages.” Id. at 384. La. C.C. art. 2324.1, which applies to tort liability, also provides that “[i]n the assessment of damages ... much discretion must be left to the judge or jury.”

PLAINTIFFS’ DAMAGES

The defendant contends that the plaintiffs’ damages award was excessive and unsupported by the evidence. The award was apportioned as follows: $78,625.09 in lost contents, $78,625.09 in expenses; $7,000 for deposit returns; $57,180.90 in lost wages, and $10,000 for mental anguish.

EXPENSES AND CONTENTS

The defendant objects to the award of damages in the amount of $22,917.00 for loss of contents and $78,625.09 for expenses, arguing that Ms. Lemon actually | ¡Incurred these expenses, not Ms. Duhon. Mr. Briley does not raise an issue with the amount of the awards; rather, he contends that Ms. Duhon did not pay for the improvements or other items used to run the bar.
At trial, both Ms. Duhon and Ms. Lemon testified that Ms. Lemon loaned Ms. Du-hon the money for the business expenses and improvements with the expectation of being repaid. Ms. Lemon testified that, in total, she advanced more than $700,000 to Ms. Duhon. Plaintiffs’ exhibit 25 verifies that Ms. Duhon signed a $25,000 promissory note to repay Ms. Lemon approximately one-month before the lease was executed. Ms. Duhon further testified that she eventually signed similar agreements because the improvement expenses continued to increase. She acknowledged that she was asked to provide the other agreements for trial; however, she could only find the first agreement.
As the record adequately supports the conclusion that Ms. Lemon advanced multiple loans to Ms. Duhon for the sports bar, we cannot say that the trial court abused its discretion in assessing a damages award for the cost of contents and expenses to Ms. Duhon.
Additionally, the plaintiffs claim that the contents award was erroneously reduced. They argue that the parties stipulated that $28,267.00 was the value of the contents. They assert that the expert report valued the items as of the day they were lost, so the items were already significantly depreciated. They conclude that the trial court should not have further reduced the award. The lease provided that the immoveable items (improvements) would become the property of Mr. Briley at the end of the lease. In instances where the lessee has made improvements and the lessor wrongfully deprives him of that use during the lease term, the lessee is |10entitled to recover damages calculated on the basis of the value of the improvements proportioned over the remaining term of the lease, even if the lease provides that the improvements become the lessors’ property at the *261 end of the lease. Mahayna, Inc. v. Poydras Ctr. Assoc, 95-932, p. 3 (La.App. 4 Cir. 12/14/95), 665 So.2d 166, 168 (citation omitted); Smith v. Shirley, 01-1249, pp. 5-6 (La.App. 3 Cir. 2/6/02), 815 So.2d 980, 985 (citations omitted).
In its oral reasons, the trial court explained that it reviewed the parties’ stipulation and awarded Ms. Duhon 2/3 of the value for the listed immovables and full value for the movables. It reasoned that there was 16 months remaining on the 24-month lease, which is 2/3 of the lease. Since the trial court properly proportioned the value of the improvements pursuant to the remainder of the lease, we find no abuse of discretion.

LOST INCOME/PROFITS

Next, the defendant claims that the trial court erred in awarding the plaintiffs damages for lost profits. He asserts that the trial court relied upon Ms. Du-hon’s tax returns from 2007 to 2008 to determine her loss in business income or profits; however, it ignored the necessary expenses which were not included on the returns. We agree.
During Ms. Duhon’s testimony, she admitted that the amount on her tax returns did not include expenses. The court interjected that these expenses would not be on her tax returns, because Ms. Lemon was the “money woman” who paid for all of the expenses. Thus, she would be lying on her returns if she included those amounts. The trial court ultimately awarded the plaintiffs $57,180.90 for |, dost wages (profits). The trial court reached this figure by calculating an average monthly income based on Ms. Duhon’s tax returns. However, it failed to consider the fact that the admittedly unclaimed expenses far outweighed the reported business income. Thus, there was no profit at all.
A claim for lost profits based solely on the testimony of the injured party and unsubstantiated by other evidence does not constitute reasonable certainty. Louisiana Joint Underwriters of Audubon Ins. Co. v. Gant, 439 So.2d 1153, 1157 (La.App. 4 Cir.1983).
Considering that the evidence as a whole does not establish this claim, we find that the trial court abused its discretion in assessing a damages award for lost profits. Therefore, the plaintiffs’ damages award is reduced by $57,180.90.

RETURN OF DEPOSITS

The defendant also claims that the trial court erred in awarding $7,000 for the return of deposits when the leases clearly identify that the amount paid in deposits was $6,000, $3,000 per unit. At trial, Ms. Duhon testified that she paid $7,000 in deposits; however, she concedes on appeal that the lease reflects a $6,000 deposit. She does not dispute this amount or otherwise allege that she actually paid $7,000. Consequently, we further reduce the plaintiffs’ award by $1,000.

MENTAL ANGUISH

Finally, the defendant attacks the general damages award of $10,000 for mental anguish, suggesting the award is punitive in nature.
[12A conversion consists of an act in derogation of the plaintiffs posses-sory rights; and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion. Labbe v. Premier Bank, 618 So.2d 45, 46 (La.App. 3 Cir.1993) (citation omitted). Damages for mental anguish and inconvenience arising *262 from the loss of use of property have been allowed in tortious conversion cases. Boisdore v. International City Bank & Trust Co., 361 So.2d 925, 932 (La.App. 4 Cir.1978), writ denied, 363 So.2d 1384 (La.1978) (citations omitted).
In support of its conclusion that the trial court really awarded punitive damages, the defendant points out that the trial court found that he converted the plaintiffs’ property in bad faith, which is inapplicable in conversion cases. In its oral reasons, the trial court made the following statement: “It’s really bad faith. I mean, it’s a wrongful eviction plus conversion. Therefore, I think that equals mental anguish. All right? So, I mean, you just can’t do that, especially when you have a contract.” However, the record reflects that the trial court stated that there was a bad faith conversion in an attempt to explain why general damages were warranted when contract cases do not usually allow for them. The court then explained that mental anguish was warranted because the case involved wrongful eviction and tor-tious conversion.
It appears that the trial court improvidently applied the bad faith standard in establishing the conversion claim. While a finding of bad faith was not necessary to substantiate this claim, we cannot say that such a ruling transformed the trial | ^court’s general damages award into an award for punitive damages, making the award erroneous.
The defendant also challenges the general damages award as excessive.
It is difficult to assess damages of this sort accurately because, as in awards for pain and suffering, the damages cannot be calculated with exactitude. However, the mere fact that plaintiff was wrongfully deprived of his property necessarily means that some mental anguish and humiliation and embarrassment resulted. Boisdore, 361 So.2d at 932 (citations omitted). It is much more difficult to arrive at the amount than to conclude that plaintiff is entitled to these damages.
Ms. Duhon discussed her mental anguish and humiliation at trial:
Everything I had, everything I borrowed, everything — I have four kids looking in my face. “Mom, what are we going to do?” I lost everything attached to that place, everything. I almost lost my home ... to face my peers, to face my family that I haven’t been taking care of. I’m the older child of four. I have been taking care of my brothers and sisters ... it took me years, two years just to get a job to face the world again.
She and Ms. Lemon testified that she was very closely connected to the community as she grew up in the area, and they would give fundraisers to develop goodwill in the community. They also testified that they had heard that the defendant was advertising on the radio to promote his own bar business on the premises.
The defendant argues that the largest award for mental anguish in a conversion claim was $3,000; however, he is incorrect in this assertion. In Boisdore, although this Court noted that awards for this element have been particularly small, it upheld a $7,500 mental anguish award, finding that the | uplaintiffioccupant was wrongfully deprived of his property for one year.[7] Id. at 933. Likewise, under the circumstances in this case, we do not find that the $10,000 award for mental *263 anguish was excessive, or otherwise constituted an abuse of the trial court’s discretion.
In contrast, the plaintiffs assert that the trial court failed to consider increasing the general damages award for her lost business opportunity. In particular, she cites to Pelleteri, supra, in support of her argument that part of her damages include loss of efforts expended in preparing the business to become profitable, and the denial of her opportunity to determine whether the business would become a long-term thriving business.
Pelleteri, however, is distinguishable. The court in Pelleteri reviewed both the landlord and the tenant’s expert testimony. They based their expert opinions on such things as a budget prepared by the shareholders of the company, profits at a comparable restaurant, and data from the National Restaurant Association. The Court found that the tenant’s expert’s comparison with another restaurant was inappropriate because that restaurant served a different type of clientele. Nevertheless, the Court found that under the facts of that case, the tenant otherwise proved its losses. For example, there was testimony that the tenants had substantial restaurant experience, and the restaurant, located on Esplanade Avenue, was closed just prior to Jazz Fest, a particularly lucrative period for restaurants and bars in New Orleans. Id, 02-2141, pp. 4, 6, 16-17, 851 So.2d at 1233, 1234, 1239-41.
|1BIn this case, there was no expert testimony to support a claim for efforts expended and lost business opportunity. Instead, Ms. Duhon and Ms. Lemon, who had no prior bar or reception hall experience, testified that the business revenues were steadily increasing. Though promising, on appeal, the plaintiffs assert they were robbed of the opportunity to find out whether the business would become lucrative in the future. Unlike in Pelleteri, we find that this testimony does not sufficiently prove a lost business opportunity, and we cannot speculate such a loss. Id., 02-2141, p. 16, 851 So.2d at 1240. Accordingly, we find no abuse in discretion in the trial court’s failure to award damages for lost business opportunity not supported in the record.

DEFENDANT’S DAMAGES

The plaintiffs further assert that the trial court improperly awarded the defendant damages as a plaintiff in reconvention. They do not challenge the amount; rather, they assert that they were locked out in the middle of renovations and precluded from finishing the necessary repairs. Thus, they conclude that the defendant should have been required to take the property in the condition he found it when he illegally changed the locks.
The defendant testified that he incurred expenses for repairs made to the building, such as fixing holes, painting, and finishing steps which were removed by Ms. Duhon and never completed. In its oral reasons, the trial judge opined that the defendant was not responsible for these repairs, and further awarded him $8,306.13. .Given that the record supports the trial court’s conclusion, we cannot say that the trial court abused its discretion in awarding the defendant damages for the cost of repairs.
| ^CONCLUSION
Based on the foregoing, the plaintiffs’ damages award is reduced by $58,180.90. In particular, we reduce the award for lost income/wages by $57,180.90, and the deposit award by $1,000. Accordingly, the trial court’s judgment awarding the plaintiff $175,722.99 is amended to $117,542.09. In all other respects, the judgment is affirmed.
*264 AMENDED; AFFIRMED AS AMENDED

. The Avenue Sports Bar, LLC was established July 1, 2007.

. The downstairs lease, for the sports bar, reflects that the lease was changed from 24 to 60 months. However, Mr. Briley denied changing the term from 24 to 60 months and the plaintiff admitted that he did not meet with her to make such a change in the written lease. Therefore, the trial court treated both leases as having a term of 24 months.

. At the time of the lockout, the sports bar was operational; however, the reception hall was still undergoing renovations, and had never opened for business.

. The defendant testified that he was called on June 1, 2008, and informed that the plaintiffs were moving out and that they had removed the defendant’s two air conditioning units from the roof. When he arrived at the property, he observed a U-Haul truck which contained the plaintiffs’ bar equipment inside. He was informed that this was their third load. Conversely, Ms. Duhon testified that they were only moving tables and chairs that were used for a wedding the previous weekend. The police officer called to the scene that day testified that the building was vacant; however, the police officer called out to the scene the following day, when the defendant refused to allow Ms. Lemon inside to retrieve her gun, testified that the building was furnished.

.Delvin Bickham filed a separate suit alleging that the defendant illegally took possession of his work tools and sound equipment left on the premises. His lawsuit, district court case number 2008-6656, was consolidated with the plaintiffs’ lawsuit, district court case number 2008-6036; however, it was dismissed by the trial court when Mr. Bickham did not appear for trial. Thus, Mr. Bickham’s lawsuit does not form part of this appeal.

. Conveniently, the defendant relies on Ms. Lemon’s assertions to support his argument that the plaintiffs were moving out and the lease was abandoned; however, he attempts to discount her requests to re-enter the premises since the request did not come from Ms. Duhon herself.

. Notably, the trial court reduced the award to offset a four-month period when the occupant used the premises without paying rent.