REVERSED AND REMANDED
Judge Rosemary Ledet
11 This is a lease dispute. From the trial court’s judgment granting the lessor’s motion for summary judgment and denying the lessee’s motion for new trial, the lessee appeals. For the reasons that follow, we reverse and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On May 22, 2014, Indulge Island Grill, L.L.C. (“Indulge”), the lessor, and Island Grill, L.L.C. (“Island Grill”), the lessee, entered into a commercial lease (the “Lease”). The leased space was located at 846 Carondelet Street in New Orleans, Louisiana (the “Leased Premises”). The lease term was approximately three years — from June 1, 2014 to May 31, 2017. Robert Lawson and Ashley Juno signed the Lease as guarantors, binding themselves with Island Grill for all amounts due; they also signed a separate guaranty.
On March 6, 2015, Indulge filed a “Petition for Lease Obligations” against Island Grill, Mr. Lawson, and Ms. Juno. In its petition, Indulge averred that Island Grill breached the Lease by failing to pay the rent due — the rent last paid was for [ 2the month of September 2014 — and that Island Grill had voluntarily vacated the Leased Premises. Indulge further averred that it had made a diligent, good faith effort to lease the Leased Premises to another party. As a result of its efforts, Indulge averred that it entered into a new lease of the Leased Premises commencing on February 6,2015, and that the term of the new lease exceeded the term of the Lease. Finally, Indulge averred that the net amount due under the Lease — crediting the amounts paid by Island Grill and the amounts to be paid under the new lease— was $133,991.27 plus attorney’s fees and costs.
On April 13, 2015, Indulge filed a motion for preliminary default; however, no default judgment was taken. On July 6, 2015, Island Grill filed an answer, generally denying the averments of the petition, and a reconventional demand.[1] In its reconven-tional demand, Island Grill asserted the following claims: illegal eviction, illegal taking, and breach of contract. Island Grill averred the following factual basis for its claims:
In November of 2014, the parties began having conversations that ISLAND GRILL, L.L.C. was considering selling the business. Indulge began acting aggressively and threatening not to permit the sale without their direct involvement. This interference was outside of the scope of the lease agreement.
*157 On or about December 4th, 2014, ROBERT LAWSON appeared at the leased premise to find the [sic] one or more of the -windows boarded and the locks changed. Upon inquiry with INDULGE, the plaintiffs-in-rule were initially informed that there had been an attempt to break into the property and that the property had been boarded temporarily. They were later informed that they no longer had access to the leased premises, their files and or personal | ¡¡documents therein, their stock therein, or any other inventory or property therein.
Island Grill further averred that Indulge “conducted a fraudulent misrepresentation of fact to [Island Grill] by not initially telling them they were illegally evicted but instead that someone had ‘broken in’ and that is why the window was boarded.”
Indulge answered the reconventional demand, generally denying the averments in it. In its answer, Indulge specifically averred that Island Grill “abandoned the property thereby waiving [its] rights under and relating to the [L]ease.” It further averred that “the eviction action was proper as a matter of law” and that “[l]essee abandoned the property, notice was given[2] and self-help rights are allowable under those circumstances.”
On September 30, 2015, Indulge filed a motion for summary judgment seeking a judgment for the net amount it alleged it was due under the Lease and a dismissal with prejudice of Island Grill’s reconven-tional demand. On November 6, 2015, a hearing was held on the summary judgment motion. Although served with notice of the hearing, Island Grill’s counsel failed to appear. Nor did Island Grill file an opposition to the summary judgment motion.[3]
On November 18, 2015, the trial court rendered a judgment granting the summary judgment motion. On the principal demand, the trial court awarded | Jndulge $118,409.17 as the net amount due under the Lease,[4] ■ $1,500.00 in attorney’s fees, and all costs of these proceedings with legal interest from October 1, 2014. The trial court also dismissed Island Grill’s re-conventional demand with prejudice. The trial court denied Island Grill’s motion for new trial. This appeal followed.
DISCUSSION
Although , Island Grill asserts multiple assignments of error, we find one disposi-tive — -whether the trial court erred in granting summary judgment.[5] “A trial *158 court’s disposition of a motion for summary judgment is reviewed using the de novo standard of review ‘under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.’ ” Citron v. Gentilly Carnival Club, Inc., 14-1096, p. 12 (La.App. 4.Cir. 4/15/15), 165 So.3d 304, 313 (quoting D’Angelo v. Guarino, 10-1555, p. 3 (La.App. 4 Cir. 3/9/12), 88 So.3d 683, 686). To determine whether summary judgment is appropriate, a reviewing, court must resolve the following two issues: (i) whether there is any genuine issue of material fact;' and (ii) whether the mover is entitled to judgment as a matter of law. Citron, 14-1096 at pp. 12-13, 165 So.3d at 313; see also Williams v. Archer W. Constr., LLC, 16-0158, p. 3 (La.App. 4 Cir. 10/5/16), 203 So.3d 325, 328.
Despite the legislative mandate in La. C.C.P. art. 966[6] that the summary judgment procedure is favored,- Louisiana jurisprudence has recognized- that “‘any doubt as to a dispute regar ding, a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.’ ” Jones v. Stewart, 16-0329, p. 8 (La.App. 4 Cir. 10/5/16), 203 So.3d 384, 389, writs denied, 16-1962, 16-1967, 16-1968 (La. 12/16/16), 211 So.3d 1169, 212 So.3d 1174, 212 So.3d 1175 (quoting Bridgewater v. New Orleans Reg’l Transit Auth., 15-0922, pp. 5-6 (La.App. 4 Cir. 3/9/16), 190 So.3d 408, 412, writ denied, 16-0632 (La. 5/20/16), 191 So.3d 1071). Louisiana jurisprudence also has recognized that “summary judgment based on subjective facts like intent is rarely appropriate.” Fiveash v. Pat O’Brien’s Bar, Inc., 15-1230, p. 1 (La.App. 4 Cir. 9/14/16), 201 So.3d 912, 914. Likewise, “issues that require the determination of reasonableness of acts and conduct of parties under all facts and circumstances of the case cannot ordinarily be disposed of by summary judgment.” Baldwin v. Bd. of Sup’rs for Univ. of Louisiana Sys., 06-0961, p. 7 (La.App. 1 Cir. 5/4/07), 961 So.2d 418, 422.
The determination of whether a fact is material turns on the applicable substantive law. Smith v. Our Lady of the Lake Hasp., Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. The -applicable substantive law in this case is the exception to the rule against a landlord’s use-of self-help in the eviction process when the lessee abandons the leased premises. The abandonment exception, which initially was a judicially crafted one, was codified in 1991 in La. C.C.P. art. 4731 B,[7] which *159 provides, in part, that “[a]fter the required notice has been given, the lessor or owner, or agent thereof, may lawfully take possession of the premises without further judicial process, upon a reasonable belief that the lessee or occupant has abandoned the premises.”[8]
Based on the abandonment exception, the Louisiana Supreme Court has recognized a lessor’s limited right to engage in “self-help” in the following scenario — “when the lessee breaches the lease by abandoning the premises, the |7lessor has the right to take possession of the premises as agent for the lessee and to relet the premises to a third party without canceling the lease or relieving, the lessee of his obligations under the lease contract.” Richard v. Broussard, 495 So.2d 1291, 1293 (La. 1986). When the abandonment exception applies, the lessor is exempt “from liability for failing to comply with the eviction procedure before taking possession if the lessee unjustifiably abandons the leased premises.” Duhon v. Briley, 12-1137, 12-1138, p. 5 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 258 (citing Girgis v. Macaluso Realty Co., 00-753, p, 4 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, 1212-13); see also Pelleteri v. Caspian Group Inc., 02-2141, 02-2142, p. 10 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1237. Conversely, “[w]hen & lessor-is not justified in believing that the leased premises are abandoned, the use of self-help to retake the property constitutes a trespass and wrongful seizure of the lessee’s property.” Duhon, supra (citing Girgis, 00-753 at pp. 4-5, 778 So.2d at 1213).
Abandonment is a factual determination. Walters v. Greer, 31,480, p. 8 (La. App. 2 Cir. 1/22/99), 726 So.2d 1094, 1098 (citing Preen v. LeRuth, 430 So.2d 825 (La. App. 5th Cir. 1983)); Horacek v. Watson, 11-1345, p. 7 (La.App. 3 Cir. 3/7/12), 86 So.3d 766, 771. In making that determination, the jurisprudence has applied a two-part test, requiring proof of both “[i] an act of abandonment and [ii] a specific intent to abandon.” Powell v. Cox, 92 So.2d 739, 742 (La. App. 2d Cir. 1957).[9] “Indicia of abandonment include a cessation of business activity or presidential occupancy, returning keys to the premises, and removal of equipment, furnishings, or other movables from the premises.” La. C.C.P. art. 4731 B.
In granting the motion for summary judgment, the trial court orally reasoned as follows:
*160 Based upon the affidavit, based upon the lease agreement, based upon the Request for Admissions and the lack of an opposition presented here, summary-judgment is warranted. There are no issues of material fact regarding whether or not this particular tenant breached the lease and left the business in disrepair to the point that the lessor needed to clean it as well as needed to relet it to a new tenant, and so the deficiency that I find in summary judgment is warranted in the amount of $118,409.17.
Although the trial court did not make an express finding of abandonment, such a finding is implicit in the trial court’s judgment, awarding the net rent due under the Lease on Indulge’s principal demand and dismissing Island Grill’s reconventional demand for illegal eviction.
On appeal, Island Grill contends that it was illegally evicted and that the trial court improperly granted summary judgment. It further contends that there is a conflict in the evidence that Indulge presented in support of its motion regarding the end of the Lease. In support, it cites the December 4 and 5, 2014 text message exchange been the parties (the “Text Message Exchange”). Island Grill points out that the Text Message Exchange reflects that its representative appeared at the Leased Premises to find the windows boarded and plywood over the door. Indulge’s representative responded that the property had been broken into and that was why the windows and door were boarded.[10] Indulge’s representative, however, |9never indicated, at that juncture, that Island Grill had been evicted. Island Grill alleges that it “was never given access to the property again, and INDULGE confiscated (without legal authority) approximately $30,000 worth of inventory and equipment.” Island Grill contends that the Text Message Exchange demonstrates that “there was no legal eviction but a ‘lock out’ where the windows were barred and ISLAND GRILL was denied access.”[11]
Indulge counters that, contrary to Island Grill’s contention, there cannot be any “conflicting evidence” in this case because Indulge was the only party that presented evidence at the summary judgment hearing. Indulge further counters that the “self-help” scenario the Louisiana Supreme Court sanctioned in the Richard case is precisely what occurred in this case — Island Grill abandoned the premises; Indulge lawfully obtained possession; the premises were relet; and a judgment was obtained by Indulge for the remaining lease obligations.
It is undisputed that Indulge did not follow the eviction procedures set forth in La. C.C.P. art. 4701[12] before obtaining *161 possession of the Leased Premises and Centering into a new lease with a third party on February 6, 2015. Thus, the narrow issue presented here is whether Island Grill abandoned the Leased Premises or Indulge unlawfully evicted Island Grill. To provide a frame of reference for addressing this issue, we first note that the record establishes the following time line:
• June 1, 2014 — The parties entered into the Lease.
• October 1, 2014 — Island Grill defaulted on the Lease by failing to pay rent.
• November 6, 2014 — Indulge issued a Notice to Vacate to Island Grill.
• December 3 and 4, 2014 — The Text Message Exchange took place.
• February 6, 2015 — Indulge entered into a new lease with a third party.
• May 31, 2017 — The Lease ended.
At the summary judgment hearing, Indulge was the only party that appeared and presented evidence. The evidence Indulge presented to establish there was an abandonment was two-fold: [i] an affidavit; and [ii] requests for admission. We separately address each item.

The affidavit

Indulge produced the affidavit of Christopher Lopez, its managing partner. In his affidavit, Mr. Lopez attested as follows:
• Indulge delivered to Island [Grill] a Notice to Vacate.
• Island [Grill] has vacated the Leased Premises voluntarily.
• An attempt was made to break into the Leased Premises after Island [Grill] vacated said premises. In order to protect and safeguard the property Indulge boarded the windows where the break-in took place and boarded the doors. Island [Grill] was aware of the issue with the break-in, that boards were placed on the property and the reasons why the boards were placed on the property.
In* Island [Grill] was aware that after it vacated the property Indulge was making efforts to lease it to another party. Island [Grill] offered to assist in this process.
• Island [Grill], upon vacating the Leased Premises, left items including food inventory in the property. Indulge, at its own expense, cleaned the property, removing all debris and trash left behind by Island [Grill],
Mr. Lopez’s affidavit fails to establish any of the three indicia of abandonment enumerated in La. C.C.P. art. 4731. To the contrary, his affidavit refutes one of the indicia — the lessee’s removal of equipment, furnishings, or other movables from the premises. In his affidavit, Mr. Lopez acknowledges that Island Grill had “items including food inventory in the property.” Thus, this is not a case in which the lessee removed all its property from the premises, evidencing an intent to abandon.[13]
*162 The only statement in Mr. Lopez’s affidavit that is sufficient to establish an intent to abandon is his attestation that “the lessee voluntarily vacated the premises.” This statement, however, is a statement of ultimate fact. See Bryan A. Garner, BLACK’S LAW DICTIONARY 629 (8th ed. 2004) (defining an “ultimate fact” as “[a] fact essential to the claim or the defense.”). “Ultimate facts and conclusions of law contained in supporting affidavits cannot be considered for purposes of summary judgment.” Thomas v. State ex rel. Dep’t of Corr., 05-0959, p. 5 (La.App. 4 Cir. 3/29/06), 929 So.2d 769, 772 (citing JCM Const. Co., Inc. v. Orleans Parish School Bd., 02-0824-26, 03-0299, 01-1930, 03-1077, p. 42 (La.App. 4 Cir. 11/17/03), 860 So.2d 610, 635).
Nor is Mr. Lopez’s attestation that the lessee voluntarily vacated the premises based on his personal knowledge as required by La. C.C.P. art. 967 A. The purpose of the “personal knowledge” requirement in this article is to confine the scope of an affidavit to “facts which the affiant saw, heard, or perceived with his own senses.” Hibernia Nat’l Bank v. Rivera, 07-962, pp. 8-9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 539. “Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment.” Id., 07-962 at p. 9, 996 So.2d at 540
Given the above reasons, Mr. Lopez’s affidavit was insufficient to establish that Island Grill abandoned the Leased Premises. Given the reasons that follow, we likewise find the requests for admission insufficient to establish abandonment.[14]

Requests for admission

In support of its motion for summary judgment, Indulge introduced a set of unanswered requests for admission (the “Requests for Admission”). According to Indulge, on July 27, 2015, it served the Requests for Admission on Island Grill. On August 27, 2015, Indulge sent a letter to Island Grill regarding its failure to | ^respond to the Requests for Admission.[15] At the time of the summary judgment hearing, Island Grill still had not responded.
Accepting Indulge’s argument, the trial court found that, under the plain language of La. C.C.P. art. 1467, Island Grill’s fail *163 ure to respond within the prescribed fifteen-day delay[16] resulted in a conclusive, deemed admission of the facts set forth in the Requests for Admission. The deemed admissions are as follows:
• [T]he Lessee received a notice to vacate from Plaintiff [Indulge.]
• [T]he Lessee did not operate the business in the leased premises on a continuous basis.
• [T]he Lessee changed its hours of operation by not opening on a regular basis.
• [T]he Lessee vacated the. premises voluntarily.
• [T]he Lessee ceased business operations in the leased premises.
• [T]he Lessee or the guarantors sought to hire or did hire a real estate agent to attempt to have the building leased.
These deemed admissions are sufficient to establish the crux of this litigation — that Island Grill abandoned the Leased Premises and thus Indulge did not illegally evict Island Grill. See Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La. 1976) (holding that deemed admissions may be used to establish a controversial issue constituting the crux of the matter in litigation); see also Davis v. Westinghouse Elec. Corp., 526 So.2d 337, 338 (La. App. 4th Cir. 1988). Indeed, one of the deemed admissions is that Island Grill voluntarily vacated .the Leased |uPremises; this deemed admission satisfies the requirement of an intent to abandon. Another of the deemed admissions — that Lessee ceased business operations in the leased premises — satisfies one of the indicia of abandonment enumerated in La. C.C.P. art. 4731 B — cessation of business.
The jurisprudence, however, has tempered the hársh penalty of automatic deemed admissions by holding that a “matter will not be deemed admitted if the party against whom the admission is sought controverts the matter in some other manner, such as by exception or answer.” 1 Frank L. Maraist, LA. CIV. L. TREATISE, CIVIL PROCEDURE § 9:8 (2d ed. 2016) (“Maraist”); Phelps Dunbar, L.L.P. v. Stout, 04-0785, p. 7 (La.App. 4 Cir. 6/15/05), 914 So.2d 44, 49 (citing and explaining the jurisprudence holding that a matter should not be deemed admitted when the party against whom the admission is sought has “denied the contested facts in other pleadings.”). Thus, when the record reflects the party against whom the admission is sought is controverting a matter, “he or she should not be deemed to admit it merely because of a failure to respond within the prescribed time frame.” Maraist, § 9:8, n. 30.[17]
As was noted in Hoskins v. Caplis, 431 So.2d 846, 849 (La. App. 2d Cir. 1983), “the function of a request for admission of facts remains as described in Voisin [v. Luke, 249 La. 796, 801, 191 So.2d 503, 505 (1966) ]. It is a time-saving procedural device fashioned, generally, to eliminate uncontroverted issues before trial on the merits.” Id. In Voisin, the Louisiana Supreme Court further stated that “[t]he procedure .... was never intended to cover an entire case and every item of *164 11Bevidence, or to permit technical considerations to prevail to the detriment of substantial justice.” Voisin, 249 La. at 807, 191 So.2d at 507.
Citing the principles enumerated in the Voisin case, the jurisprudence has refused to allow deemed admissions to serve as the sole basis for a default judgment. Louisiana NBOA Const. & Self Insurers Fund v. Liu, 30,041, p. 5 (La.App. 2 Cir. 12/10/97), 707 So.2d 1002, 1005 (reasoning that “justice would not be served were we to allow the plaintiff to circumvent, through unanswered requests for admission, the requirement of presenting sufficient evidence to counter the presumption in this default judgment setting that the defendant has denied the allegations of the petition.”).[18] As a commentator has noted, “the burden of proving a prima facie case may not be carried solely by offering unanswered requests for admission.” 2 Judge Steven R. Plotkin and Mary Beth Akin, LOUISIANA PRACTICE SERIES: LOUISIANA CIVIL PROCEDURE, Article 1702 (2016 ed).
In the same vein, the jurisprudence, again citing the principles enumerated in the Voisin case, has held that the granting of summary judgment based solely on deemed admissions, “in the face of plain assertions disputing the alleged fact,” is “too drastic a sanction to impose for failure to respond to a requested admission of fact.” Hoskins, 431 So.2d at 849; see also La C.C.P. art. 865 (providing that “[e]very pleading shall be so construed as to do substantial justice.”).[19] Such is the case here.
|, (Although Island Grill failed to respond to the Requests for Admission, it filed a verified reconventional demand. In that pleading, which was in the record at the time of the summary judgment hearing, Island Grill alleged that it was illegally evicted. Island Grill thus controverted the pivotal statement in the deemed admissions that it voluntarily vacated the Leased Premises. Under these circumstances, we find that the granting of a default summary judgment based solely on the deemed admissions is too drastic a sanction. See Hoskins, supra. Given our finding that the trial court erred in granting summary judgment, we pretermit the other assignments of error raised by Island Grill.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed; and this matter is remanded for further proceedings.
REVERSED AND REMANDED

. Mr. Lawson and Ms. Juno are also defendants in the underlying suit by Indulge, plaintiffs in the reconventional demand, and appellants. Nonetheless, for ease of discussion, we refer in this opinion to the defendants-appellants singularly as “Island Grill."

. A copy of the Notice to Vacate, which is dated November 6, 2014, first appears in the record as an attachment to Indulge’s memorandum in support of its motion for summary judgment. In its memorandum in support, Indulge alleged that the Leased Premises was abandoned "on or about September 30, 2014.”

. In its appellant brief, Island Grill explains that "[t]his Motion was served on counsel for ISLAND GRILL but inadvertently misfiled by a new member of said counsel’s staff. Therefore, no response was filed and the hearing date was not calendared.”

. The trial court calculated this net amount by reducing the amount Indulge requested ($133,991.27) by two sums — $10,000.00, the amount of Island Grill's deposit; and $5,582.10, the total amount for liability insurance. As the trial court stated, "I took off $3,336.57 as well as $2,245.53 [for liability insurance] plus 10,000 [for the deposit]." Indulge’s counsel conceded to the reduction of the amount it requested by these two sums.

. The three assignments of error Island Grill raises on appeal are as follows:
1. The trial court committed reversible error in granting INDULGE’S Motion for Summary Judgment and in dismissing the ISLAND GRILL'S claims against INDULGE.
2. The trial court committed reversible error in having ex parte communication *158 with counsel for INDULGE in which the District Judge and counsel for INDULGE discussed the merits of the case off the record, and for failing to disclose such communication with counsel for ISLAND GRILL.
3. The trial court committed reversible error and abused its discretion and was manifestly erroneous in not correctly applying Article 1972, which gives specific grounds why a new trial shall be granted; and/or in not correctly applying Article 1973, which states that a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.

. In 2015, the Louisiana legislature revamped the article governing summary judgment, La. C.C.P. art. 966, "to provide for certain procedures at the hearing on a motion for summary judgment; to provide for the filing and consideration of certain documents; to provide for. the burden. of proof; and to provide for related matters,” 2015 La. Acts 422 (effective January 1, 2016). The Legislature, however, provided that the amendment did not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act. Because the summary judgment in this case was rendered on November 18, 2015, we apply the former version of the article.

. See 1991 La. Act 684 (which amended La. C.C.P. art, 4731 to authorize a lessor to take possession of leased premises abandoned by the lessee).

. La. C.C.P. art. 4731 provides as follows:
A. If the lessee or occupant fails to comply with the notice to vacate required under this Title, or if the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to the lessor or owner. The rule to show cause shall state the grounds upon which eviction is sought.
B. After the required notice has been given, the lessor or owner, or agent thereof, may lawfully take possession of the premises without further judicial process, upon a reasonable belief that the lessee or occupant has abandoned the premises. Indicia of abandonment include a cessation of business activity or residential occupancy, returning keys to the premises, and removal of equipment, furnishings, or other movables from the premises.

. See also Curtis v. Katz, 349 So.2d 362, 363 (La. App. 4th Cir. 1977) (quoting Salim v. Louisiana State Board of Education, 289 So.2d 554, 560 (La. App. 3d Cir. 1974) (holding that " '[a]bandonment' of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person.”).

. A copy of the Text Message Exchange was attached an exhibit to Indulge's motion for summary judgment. The summary judgment law in effect at the time of the motion for summary judgment provided that "all attachments to the motion and the opposition memorandum are deemed admitted.” Citron, 14-1096 at p. 11, 165 So.3d at 312. Thus, the Text Message Exchange was deemed admitted. The Text Message Exchange reads as follows:
“Hey Kelly [Indulge’s representative], Robby [Island Grill’s representative] just tried going to Indulge to check in on the place and there seems to be ply wood over the door almost as if some had broken the glass?”
"Yeah — someone broke in a couple weeks ago.”

. Island Grill also contends that there were disagreements between the parties as to the amounts of the deposits placed on the Leased Premises, including the amounts for taxes and insurance. Given our finding on the abandonment issue, we find it unnecessary to address this issue regarding the calculation of the net rent due under the Lease.

. La. C.C.P. art. 4701 provides, in part, as follows:
*161 When a lessee’s right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.

. See Ogden v. John Jay Esthetic Salons, Inc., 470 So.2d 521, 524 (La. App. 1st Cir. 1985) (finding abandonment given that “virtually all of the entity’s assets” were withdrawn from the premises); Dardis v. Madere, 433 So.2d 322, 324 (La. App. 1st Cir. 1983) (finding abandonment given that “the premises were cluttered with trash and appeared to be aban *162 doned”); Central Oil & Supply Co. v. Clary, 00-1459, p. 5 (La.App. 3 Cir. 2/28/01), 781 So.2d 772, 775 (rejecting lessee's contention that it had no intent to abandon because it did not remove all of their equipment from the premises because that equipment, which included underground tanks and lines, could not be easily removed); compare Pelleteri, 02-2141, 02-2142 at p. 11, 851 So.2d at 1237 (finding no abandonment given "hurried removal of food and liquor from the Leased Premises occurred, because Caspian [lessee] feared the loss of these items if Ms. Pelleteri [lessor] followed through on her threat to lock Caspian out of the Leased Premises.").

. Because we find neither the affidavit nor the request for admissions sufficient to establish abandonment, we find it unnecessary to address the issue Island Grill raises regarding the apparent conflict in Indulge’s own evidence created by the Text Message Exchange. Nonetheless, we note that the Text Message Exchange reflects that Island Grill’s representative went to the Leased Premises in December 2014 "to check in on the place.” The affidavit states that, at this juncture, Island Grill had voluntarily vacated the Leased Premises and had left items, including a "food inventory” in the premises. The fact that Island Grill was checking in on the Leased Premises coupled with the fact it had items left on the Leased Premises arguably belies an intent by Island Grill to abandon the Leased Premises.

. A copy of the August 27, 2015 letter is attached to Indulge’s motion for summary judgment.

. On August 1, 2016, the Legislature amended La. C.C.P. art. 1467 to increase the delay period to respond to requests for admission to thirty days. 2016 La. Act 132.

. See also Phelps Dunbar, 04-0785 at p. 7, 914 So.2d at 48-49 (noting that “Louisiana courts have allowed late-filed denials to requests for admissions to constitute requests for withdrawal of those admissions, even if the responses were. provided extremely late and were not presented to the court by a motion to withdraw or amend the admissions,”).

. The jurisprudence also has noted that the principles enunciated in Voisin “should serve as a guideline in determining whether permission ought to be granted to withdraw an admission.” Security Nat. Trust v. Kalmback, 613 So.2d 664, 669 (La. App. 2d Cir. 1993).

. Differentiating between the use of deemed admissions for their intended use and the use of such admissions to preclude presentation of the case on the merits, the Texas Supreme Court in Wheeler v. Green, 157 S.W.3d 439, 443 (Tex. 2005), stated:
When, requests for admissions are used as intended — addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents — deeming admissions by default is unlikely to compromise presentation of the merits.... But when a party uses deemed admissions to try to preclude presentation of the merits of a case, the same due-process concerns arise [as in other merits preclusive sanctions].